650 So.2d 671 (1995)
Marcia MILLER, Appellant/Cross-Appellee,
v.
ALLSTATE INSURANCE COMPANY, Appellee/Cross-Appellant.
No. 92-1293.
District Court of Appeal of Florida, Third District.
February 15, 1995.
*672 Garel and Jacobs, and Jeffrey A. Jacobs, Coral Gables, for appellant/cross-appellee.
Clark, Sparkman, Robb & Nelson and Jim Clark, Miami, for appellee/cross-appellant.
Before HUBBART, COPE and GODERICH, JJ.
COPE, Judge.
Marcia Miller ("Miller") appeals the entry of a directed verdict in favor of Allstate Insurance Co. ("Allstate") following a jury verdict in her favor. Allstate cross-appeals an evidentiary ruling.

I.
This is the second appearance of this case in this court. See Miller v. Allstate Ins. Co., 573 So.2d 24 (Fla. 3d DCA 1990), review denied, 581 So.2d 1307 (Fla. 1991) (hereinafter "Miller I"). Plaintiff-appellant Marcia Miller owned a new Cadillac. As summarized in this court's prior opinion:
Marcia Miller and her passenger were severely injured when Miller's new car crashed into a wall. The cause of the crash, according to Miller, was that the vehicle's accelerator stuck, causing an unavoidable collision with a retaining wall. The automobile was a total loss. While Miller was recuperating in the hospital, her father, who is an attorney, contacted Allstate, her automobile insurer, and informed an agent, Kenneth Malkin, that Miller wanted to retain possession of the automobile in order to have it examined by an expert for defects. He was of the opinion that his daughter had a products liability claim against the manufacturer. Malkin told Miller and her father that Allstate wanted temporary possession of the car because they also planned to have an expert examine it for defects as they anticipated that the passenger injured in the accident would file a claim against Allstate.
Eventually the parties reached an agreement whereby Miller relinquished possession of the car to Allstate to prepare for its defense to a claim by the passenger. In exchange, Allstate promised to preserve the car and to make it available for inspection by Miller's experts. The existence of the oral agreement is not disputed. Before any expert examination was performed, however, Allstate, in breach of the agreement, sold the car to a salvage yard where it was disassembled and disposed of. Miller sued Allstate alleging that, as a result of Allstate's breach of the agreement to preserve the wrecked automobile for expert inspection, she was denied the opportunity to maintain a products liability action against the manufacturer.
The court held a special proceeding where Miller's witness, a safety engineer, testified that, although the collision was most likely caused by a defect, he would be unable to give an expert opinion in the case without examining the automobile. Allstate moved for a directed verdict on two grounds: 1) Florida law does not recognize a cause of action in contract for damages based on the denial of an opportunity to prove a products liability case; and 2) even if such a cause of action existed, in light of the holding in Cassisi v. Maytag Co., 396 So.2d 1140 (Fla. 1st DCA 1981)  that a products liability plaintiff may establish a prima facie case for jury consideration on circumstantial evidence  *673 Miller was not denied an opportunity to pursue her case. The court directed a verdict in favor of Allstate.
573 So.2d at 25-26. Miller appealed and this court reversed, holding that a cause of action for spoliation of evidence does exist in a contractual context. Miller I, 573 So.2d at 27.[1] Allstate claimed that Miller's alleged damages were too speculative, but that claim was rejected by this court. 573 So.2d at 27-29. This court also held that the availability of the Cassisi inference to aid Miller's product liability claim would not afford a complete defense for Allstate for loss of the evidence. Id. at 31.
At trial on remand, Allstate again moved for a directed verdict on the grounds that: 1) Miller had failed to sue the manufacturer for the product liability claim; and 2) there was insufficient proof of her damages. The trial court reserved ruling and allowed the case to go to the jury. The jury returned a verdict in Miller's favor. The trial court then granted the motion for directed verdict and entered judgment in favor of Allstate. This appeal and cross-appeal ensued.

II.
On remand from Miller I there was a strong dispute between the parties over how to interpret this court's prior opinion. In two footnotes, Miller I stated that a plaintiff could join a products liability action with an action for spoliation of evidence and that the action for spoliation of evidence need not await conclusion of the products liability action. Id. at 28 n. 7 & 31 n. 13. Based on that language, in its motion for directed verdict Allstate argued that this court had created a mandatory requirement for the plaintiff to bring a products liability action prior to, or in conjunction with, the action for spoliation of evidence. Since Miller in this case did not bring a products liability action, Allstate argued that Miller had failed to satisfy a condition precedent for the maintaining of the claim for spoliation of evidence, and that her claim was accordingly barred. By contrast, Miller argued that the language did not create a mandatory requirement and that she had provided satisfactory proof of each of the elements of her spoliation claims.
We conclude that by granting Allstate's motion the trial court correctly interpreted Miller I. The intent of Miller I was that Miller pursue her claim against the manufacturer of her car prior to or simultaneously with her claim against Allstate. The dispositive language is the following:
For reasons of judicial economy, and to prevent piecemeal litigation, we see no reason to wait for final judgment in the underlying [products liability] lawsuit before bringing an action for the destruction [of evidence] claim... . [A] jury trying the concurrent claims in a single proceeding may be in the best position to determine issues of causation and damages.
* * * * * *
In the more efficient trial of both the product liability claim and the destruction of evidence [claim] in a single action, the jury will decide at the outset whether the plaintiff proved by the greater weight of the evidence that the product was defective when it left the hands of the seller. If the answer to that question is no, the jury will next decide whether the failure to prove that issue was a result of the destruction of the evidence by Allstate.

573 So.2d at 28 n. 7, 31 n. 13 (citations omitted; emphasis added).
Given the statements just quoted, Miller I must be read as holding that where a viable means exists to pursue the underlying products liability claim, that cause of action must be pursued prior to, or together *674 with, the spoliation of evidence claim. Even in a products liability setting where evidence has been lost, the primary wrongdoer is the manufacturer of the defective product. The person who lost the evidence has created problems of proof for the plaintiff, but the entire liability should not shift from the manufacturer to the person who lost the evidence unless the loss of evidence has so fatally impaired the products liability claim that to bring a products liability action would be frivolous.
Miller argues that in this case it would have been frivolous to proceed against the manufacturer, given the expert's inability to offer an opinion on the issue of product defect. Miller's argument disregards the fact that the prior panel had the benefit of her expert's opinion and nevertheless explicitly referred to the simultaneous pursuit of her claim against the manufacturer and against Allstate. See Miller I, 573 So.2d at 28 nn. 5, 7, 13. The Miller I panel necessarily concluded that the Cassisi product defect inference was available to Miller and would allow Miller to proceed against the manufacturer.
The Cassisi court described the product defect inference which is available to certain product liability claimants, including those whose evidence has been destroyed or lost.[2] There the court said:
There is, however, one type of proof of product defect, which, from a given set of circumstances, aids a plaintiff in meeting his burden by creating a legal inference that the product was defective both at the time of the injury and at the time it was within the control of the supplier. This inference arises from the occurrence of the accident itself, and the case most often cited as so holding is Greco v. Bucciconi Engineering Co., 283 F. Supp. 978 (W.D.Pa. 1967), aff'd, 407 F.2d 87 (3d Cir.1969). We approve the Greco rule and apply it to the case now before us. That rule, applying Pennsylvania law, simply states that when a product malfunctions during normal operation, a legal inference, which is in effect a mirror reflection of the Restatement's[[3]] standard of product defectiveness, arises, and the injured plaintiff thereby establishes a prima facia case for jury consideration.

* * * * * *
In entering judgment on the jury's verdict in favor of plaintiff, and addressing itself to the defendant's contention that the verdict was speculative, the Greco court stated: "A finding that the malfunction was prompted by a defect in the control panel or air system would be equally `speculative'; no evidence in support of these theories having been adduced. A malfunction evidences a defect. [citations omitted] The plaintiff is not obliged to negate alternative grounds of causation." 283 F. Supp. at 984. In approving the lower court's judgment, the Third Circuit Court of Appeals held that a "`defective condition' within the meaning of Section 402A [can be established] by proving ... the product functioned improperly in the absence of abnormal use and reasonable secondary causes." 407 F.2d at 89-90. And the inference was extended to the time of sale as well as the time of injury, the court observing that "there was ... sufficient evidence to satisfy reasonable and well balanced minds that a defect existed at the time of sale." 407 F.2d at 91.
*675 396 So.2d at 1148-49 (emphasis added; footnotes omitted). The Cassisi court also said, "The user's testimony of the circumstances of the accident is a generally accepted method of evidence for establishing proof of a defect." Id. at 1150 n. 21 (citation omitted).[4]
In the present case Miller had purchased a new Cadillac, which was only a few months old at the time of the accident. She testified that she operated the vehicle in a normal fashion on the night of the accident. She described the sticking of the accelerator which caused the loss of control and collision with the nearby wall. This was sufficient under the terms of Cassisi to invoke the product defect inference and for Miller's case to proceed to the jury. See id.; see also Worsham v. A.H. Robins Co., 734 F.2d 676 (11th Cir.1984) (Cassisi applied); Parke v. Scotty's Inc., 584 So.2d 621 (Fla. 1st DCA) (same), review denied, 592 So.2d 682 (Fla. 1991);[5]Jones v. Heil Co., 566 So.2d 565 (Fla. 1st DCA 1990) (same); Warner v. Sony Corp. of America, 560 So.2d 399 (Fla. 4th DCA 1990) (same); Thrasher v. Koehring Co., 543 So.2d 754 (Fla. 3d DCA 1988) (same); Diversified Products Corp. v. Faxon, 514 So.2d 1161 (Fla. 1st DCA 1987) (same); Marcus v. Anderson/Gore Homes, Inc., 498 So.2d 1051 (Fla. 4th DCA 1986) (same); Gencorp, Inc. v. Wolfe, 481 So.2d 109 (Fla. 1st DCA 1985) (same), review denied, 491 So.2d 281 (Fla. 1986).
We therefore conclude that the trial court correctly interpreted this court's Miller I opinion and affirm the final judgment. In light of that ruling, the cross-appeal is moot.
Affirmed.
NOTES
[1] The elements of the cause of action have since been stated as follows:

1) existence of a potential civil action;
2) a legal or contractual duty to preserve evidence which is relevant to the potential civil action;
3) destruction of that evidence;
4) significant impairment in the ability to prove the lawsuit;
5) a causal relationship between the evidence destruction and the inability to prove the lawsuit; and
6) damages.
Continental Ins. Co. v. Herman, 576 So.2d 313, 315 (Fla. 3d DCA 1990), review denied, 598 So.2d 76 (Fla. 1991).
[2] For example, in Cassisi the claim related to a clothes dryer which was destroyed in the fire which resulted from the defect. Cassisi cites other cases in which the inference has been applied: Lindsay v. McDonnell Douglas Aircraft Corp., 460 F.2d 631 (8th Cir.1972) (plane was lost at sea after a fisherman saw it on fire); McCann v. Atlas Supply Co., 325 F. Supp. 701 (W.D.Pa. 1971) (a new tire failed, caught fire, and was destroyed); Tweedy v. Wright Ford Sales, Inc., 64 Ill.2d 570, 2 Ill.Dec. 282, 357 N.E.2d 449 (1976) (brakes failed on new car under normal driving conditions; brake mechanism partially destroyed in resulting crash); Stewart v. Budget Rent-a Car Corp., 52 Haw. 71, 470 P.2d 240 (1970) (steering failure on new car; car taken apart after crash and parts sold); Vanek v. Kirby, 450 P.2d 778 (Or. 1969) (a new car left the road under normal driving conditions). Cassisi, 396 So.2d at 1150-52.
[3] Restatement (Second) of Torts § 402A (1966).
[4] Cassisi explicitly states that situations in which the product defect inference is available include circumstances where the product was lost or destroyed, although the inference applies in other circumstances as well. Id. at 1151.
[5] The Parke decision reads this court's opinion in Miller I to say "presumption of defectiveness does not arise from fact that a car left the road while under control of the driver." Parke, 584 So.2d at 623. We do not agree with that characterization of Miller I. Miller I said:

Cassisi distinguishes between "passive" appliances such as clothes dryers, stoves, and television sets which are set in operation by turning a switch, and a product, such as a car, which requires a consumer's active participation in the operation. There is no disagreement that the presumption arises in the passive use cases. By way of contrast, the court noted that "the fact that a car leaves the road while under the control of its driver may not necessarily give rise to the same generous inference of defect." Cassisi, 396 So.2d at 1152. Although application of the inference to automobile cases has been roundly criticized, most jurisdictions make no distinction between vehicles and other products. Annotation, Strict Products Liability: Product Malfunction Or Occurrence Of Accident As Evidence Of Defect, 65 A.L.R. 4th 346 (1988).
573 So.2d at 30 n. 11 (emphasis added). When read in context with the accompanying text, it is clear that Miller I found the Cassisi product defect inference applicable to the new automobile in the present case.