737 So.2d 1124 (1999)
Diane ALDRICH and James Aldrich, her husband, Appellants,
v.
ROCHE BIOMEDICAL LABORATORIES, INC. et al., Appellees.
No. 98-2528.
District Court of Appeal of Florida, Fifth District.
June 4, 1999.
Rehearing Denied August 5, 1999.
Mark A. Nation of The Nation Law Firm, Longwood, for Appellants.
William E. Ruffier and Ruth C. Osborne of Sanders, McEwan, Martinez, Luff & Dukes, P.A., Orlando, for Appellees.
GOSHORN, J.
Diane and James Aldrich timely appeal the partial summary final judgment in favor of Harvey Bernhardt, M.D., and Bernhardt Laboratories, P.A. (hereinafter Bernhardt), in the Aldriches' suit for medical negligence and spoliation of evidence.[1] The Aldriches argue that the court abused its discretion in entering summary judgment in Bernhardt's favor based on the spoliation of the evidence. We agree and reverse.
The suit stemmed from the late discovery of Diane Aldrich's cervical cancer. Her 1994 pap smear slide was read as normal by a technician at Bernhardt's laboratory; similarly, her 1995 pap smear slide was read as normal by a technician at Roche Biomedical. A 1996 cervical biopsy showed cancer, notwithstanding the earlier lab test reports. Aldrich, at age 24, underwent extensive surgical procedures, including a radical abdominal hysterectomy. She alleged in her complaint that had the diagnosis been made earlier, she could have been treated without the extreme surgical measures; however, the delay in diagnosis resulted in the progression of abnormal cells in the cervix to endometrial cancer. Count I asserted a medical negligence claim based on Bernhardt's failure *1125 to detect, identify, and report the abnormalities.
Before this matter reached the presuit investigation stage,[2] Bernhardt and Lab-Corp sent the 1994 and 1995 pap smear slides (respectively) to Dr. David Maurer for a second opinion. Dr. Maurer interpreted both slides as containing abnormal cell groups consistent with adenocarcinoma, which correlated well with the cervical biopsy. The parties stipulated that "David A. Maurer, M.D.'s secretary, Marilyn Smith, returned the slide received from Bernhardt Laboratories, P.A. to Laboratory Corporation of America (LabCorp) by U.S. Mail"[3] and that "[t]he pap smear slide reviewed by Bernhardt Laboratories, P.A. and re-reviewed by David A. Maurer, M.D. is missing, and has not been located."
Bernhardt, in its affirmative defenses, asserted that Aldrich "or other parties" had lost the slides and without the slides, Bernhardt could not defend the case. In its motion for summary judgment, Bernhardt referenced the affidavit of David Petersen, a cytotechnologist at LabCorp, who stated that the slides had not been returned to his attention and he had never seen them again after they were sent to Dr. Maurer in May 1996. He stated that in 1997, he had conducted a thorough search of LabCorp's facilities and had failed to find the slides or any records or evidence the slides had been returned. He concluded that therefore the slides were not in LabCorp's possession, were not lost by LabCorp, and in fact were lost by Dr. Maurer or en route from Dr. Maurer to LabCorp. Bernhardt also filed the affidavit of its expert pathologist, Dr. Franklin, who stated, "I am unable to render an expert opinion on behalf of Dr. Bernhardt due to the absence of the pap smear slide Dr. Bernhardt or his laboratory allegedly misread."
The trial court found that Bernhardt was entitled to summary final judgment due to the spoliation of the evidence and entered judgment accordingly.
Spoliation is defined as "[t]he intentional destruction of evidence and when it is established, fact finder may draw inference that evidence destroyed was unfavorable to party responsible for its spoliation.... The destruction, or the significant and meaningful alteration of a document or instrument." Black's Law Dictionary 1401 (6th ed.1990) (citations omitted). While the intentional destruction of evidence is usually met with the most severe sanction, Metropolitan Dade County v. Bermudez, 648 So.2d 197 (Fla. 1st DCA 1994), the inadvertent destruction of evidence generally calls for a lesser sanction, unless the opposing party demonstrates that its case is fatally prejudiced by its inability to examine the lost evidence. Sponco Mfg., Inc. v. Alcover, 656 So.2d 629 (Fla. 3d DCA 1995), rev. dismissed, 679 So.2d 771 (Fla.1996)
In Sponco Manufacturing, Inc., the court set forth the following test:
What sanctions are appropriate when a party fails to preserve evidence in its custody depends on the willfulness or bad faith, if any, of the party responsible for the loss of the evidence, the extent of prejudice suffered by the other party or parties, and what is required to cure the prejudice.
Id. at 630 (citations omitted). Applying this test, the Aldriches conclude (1) they had no responsibility for the lossthe slides were lost either by the United States Postal Service or LabCorp; (2) there is little prejudice because Bernhardt had scientifically examined the 1994 slide before it was lost (referring to Bernhardt's 1994 reading of the slide), the Aldriches retain the burden of proof, and both parties will have the same problem because of the missing slides; and (3) there is no need to "cure the prejudice." The Aldriches point out that Bernhardt originally chose to have a cytotechnologist, not a medical doctor, review the slide and contend that if cytotechnologists are good enough for life and death decisions, they should be good enough for litigation. We agree.
*1126 Interestingly, under the facts of this case, the blame for the loss of the slides cannot be placed with confidence on any party. As stipulated, the 1994 slide was returned by Dr. Maurer's secretary. Whether the slide was then lost in the mail or whether LabCorp received the slide and then lost it, cannot be ascertained.[4] We are not unmindful of the affiant's conclusory statement that the slides were not lost by LabCorp; however, this statement is outside the scope of the affiant's knowledge. All he can say is that a search was made six months after the slides were mailed by Dr. Maurer's secretary and the slides were not found. Obviously the simple fact that an object is not located does not mean the object was never in one's possession. Given that it cannot be established that LabCorp did not lose the slides, the trial court abused its discretion in entering summary judgment for Bernhardt. See Stevenson v. Stevenson, 661 So.2d 367 (Fla. 4th DCA 1995) (holding that because "it has not been proven conclusively that [the former wife] is responsible [for the disappearance of the original modified agreement]," it is not appropriate to impose a presumption against the former wife even though the missing agreement, which had "disappeared under questionable circumstances," would have been unfavorable to her); King v. National Sec. Fire & Cas., 656 So.2d 1335 (Fla. 4th DCA 1995) (holding that it was error to impose an evidentiary presumption in favor of the defendant because the law firm responsible for losing the message slips was not a party to the action and thus the destruction of the firm's message slips was not imputable to the plaintiff).
This case does not turn on whether different doctors could have legitimate differences of opinion on the course of treatment to be taken based on the slide; rather, it turns purely on a question of fact. The slide either showed the presence of cancer cells or it did not. Once Bernhardt read the slide and reported that the slide showed normal cells, Bernhardt's position was sealed. At trial, Bernhardt can have the cytotechnologist testify to her conclusions and the Aldriches can have Dr. Maurer testify to his conclusions.[5] This is to be done without any shifting of burdens, rebuttable presumptions, or striking of testimony.
REVERSED and REMANDED for further proceedings.
ANTOON, J., concurs.
HARRIS, J., dissents, with opinion.
HARRIS, J., dissenting.
I respectfully dissent.
Here, there is no question that spoliation occurred and the defendants Bernhardt (Bernhardt) played no role in it. Upon the request of its patient, plaintiff herein, Bernhardt delivered the 1994 biopsy slide previously read to be negative by a technician employed by Bernhardt into the possession of Dr. Maurer, chosen by plaintiff's treating physician to give a second opinion after a 1996 biopsy proved positive. After concluding that the 1994 biopsy slide obtained from Bernhardt and a 1995 biopsy slide previously read by (and *1127 obtained from) Roche which was also determined to be negative "contain[ed] abnormal cell groups consistent with adenocarcinoma which correlated well with the cervical biopsy," Maurer mailed the 1994 slide by regular mail, not back to Bernhardt from whom he had obtained it, but to Roche without the approval or consent of Bernhardt. The whereabouts of the slide is now unknown.[1]
The issue here is not the bad faith destruction of evidence by anyone. It is whether Bernhardt has been so prejudiced by the loss of the evidence which was delivered at plaintiffs request into the hands of plaintiffs expert that a proper defense cannot now be maintained. The trial court found that such prejudice exists and I agree.
Equally important to the plaintiffs right to seek redress for the alleged negligent act of another is the defendant's right to fully and fairly present evidence that its act, under the circumstances, was reasonable. Once the game is afoot, once plaintiff has been given her open access to the court for redress of her injury, then another constitutional imperative comes into play: the plaintiff and the defendant are then "equal before the law." See DePuy v. Eckes, 427 So.2d 306 (Fla. 3d DCA 1983) (The defendant inadvertently lost an exhibit necessary to plaintiffs cause. Even though plaintiff had obtained an examination of the exhibit by an independent expert before delivering it to defendant, because further testing by plaintiff was prevented by defendant's loss of the exhibit a default judgment was entered in favor of plaintiff).[2]
Bernhardt has been disadvantaged, and plaintiff has been advantaged, by the loss of the slide by plaintiffs expert. In so far as Bernhardt is concerned, it does not matter whether Dr. Maurer burned the slide, threw it in his wastebasket, or mailed it to the wrong person. The inescapable fact remains that Dr. Maurer did not, and now cannot, return the slide to Bernhardt. We are, by the majority opinion herein, rendering a fair defense impossible by, for all practical purposes, predetermining Bernhardt's negligence. Aldrich's suggestion that Bernhardt is not prejudiced because the technician who initially read the biopsy slide, the very technician whose competence is being challenged in this matter, can effectively testify in opposition to her expert is incredible.[3] First, the technician read *1128 the slide some years before plaintiff's expert and several years before she will be asked to testify and will therefore be testifying from near-ancient memory. Even if the technician kept notes separate from the slide and even if she kept these notes for over five years, still they may require the slide for explanation. She may well be limited to testifying that it was her practice not to be negligent and she followed that practice in this case. Second, because of the technician's "interest" in the case, she will have to overcome an automatic credibility problem (and the jury will be so instructed by the trial court) which the plaintiff's independent expert will not face. Third, the technician will be testifying more as a fact witness than as an expert. She might be expected to explain the protocol used in examining biopsy slides and describe her application of that protocol to the review in question. Since she will not be able to point to the slide to demonstrate her point, the technician will be effectively limited to opining that she made no error. Further, she will not be as effective in justifying the scientific basis for the protocol used as a doctor who is familiar with the development of and understands the scientific basis for the reliability of the protocol. Fourth, the technician, a trained professional healthcare worker but a non-doctor, will not have the credentials of plaintiffs expert and will suffer from a lesser status in the jury's eyes than will be accorded a physician who receives referrals from other doctors to read slides. Fifth, Bernhardt is denied the opportunity to have its independent expert evaluate the performance and competence of plaintiffs expert and perhaps render a contrary opinion.[4]
The trial court had a sufficient basis for determining that undue prejudice resulted to Bernhardt because of the spoilation of evidence. The court did not abuse its discretion by granting the summary judgment in this cause and leaving plaintiff to her ongoing claims for malpractice and spoilation of evidence against Roche. She may choose to expand her spoilation count to include Dr. Maurer.
Because I believe the trial court properly analyzed this case, I would affirm.
NOTES
[1] Bernhardt Laboratories provided "overflow" laboratory services to Roche Biomedical Labs, Inc. In 1995, Roche merged with another group and became Laboratory Corporation of America Holdings (LabCorp). The summary final judgment was only as to Bernhardt; LabCorp's motion for summary judgment was denied.
[2] This according to LabCorp's motion to dismiss.
[3] This language, if not an actual admission that LabCorp was in receipt of the slides, is dangerously close thereto.
[4] While we cast no aspersion on the veracity of LabCorp's contention that it does not have the slides, the fact that the loss of the slides apparently works to LabCorp and Bernhardt's benefit cannot go without notice.
[5] The dissent fails to recognize the fact that both sides face the same problem because of the loss of the slides. Without the slides, the suit is a credibility contest in which the Aldriches have the burden of proof. Further, the case cited by the dissent, DePuy, Inc. v. Eckes, 427 So.2d 306 (Fla. 3d DCA 1983), involved two distinguishing factors. First, suit had already been filed when the evidence was sent to defendants' expert for testing. Second, the plaintiff entrusted the evidence to defendants only after securing an order prohibiting the destruction of the evidence. Defendants were subject to this order at the time their expert placed the evidence in the mail. In the instant case, the slides were sent off for a second opinion at the behest of the Aldriches' treating physicianprior to the presuit investigation stage. Suit had not been filed and may not have even been contemplated. In any event, no order was violated.
[1] It is hoped that this case will encourage experts to treat more carefully evidence delivered into their hands. The fact that Roche, because of an overloaded schedule, referred this biopsy slide to Bernhardt for analysis does not make Roche thereafter Bernhardt's agent for receipt of mail. In any event, one would expect that at a minimum the slides would have been returned by certified mail. While I agree plaintiff played no direct role in the loss of the evidence, she was, through the actions of her agent, more culpable than Bernhardt.
[2] The majority distinguishes this case because the defendant in DePuy inadvertently violated a court order not to destroy evidence. Must the court order a party not to destroy evidence before sanctions are appropriate? Is it a greater harm to unintentionally violate a court order than to inadvertently deprive the other party of the possibility of a fair trial? The majority relies on a distinction I simply cannot grasp. I realize that this case is now reduced to a question of credibility. It is the fact that we have given plaintiff such an advantage in this contest that I find wrong.
[3] So also is her suggestion that because the technician was permitted to read the slide in the first instance, we should hold that "if she is good enough for life and death decisions she should be good enough for litigation." Perhaps this represents good rhetoric and might be very effective with the jury; it does not represent good law. It is a veiled criticism of the industry practice of having nonpathologists read biopsy slides. It ignores the "costs/benefit" precepts of Law and Economics, a respected, if developing, theory of jurisprudence. For example, society could eliminate practically all road deaths and serious injuries by merely requiring that all vehicles be designed like tanks and limited to a maximum speed capacity of 10 miles per hour. Any subsequent deaths and injuries would be rare and freakish. Society has instead chosen to accept some risk of death and injury in order to avoid the prohibitive cost in money and efficiency necessary to avoid all risk. It is therefore not negligent in and of itself to design a vehicle smaller than a tank with the ability to exceed 10 miles per hour. But it remains possible to negligently design such a vehicle.

In a case such as ours, it is possible to require that all slides be examined by a pathologist. We know from the fact that this slide was sent to Bernhardt in the first instance because of the overflow work of another laboratory, that there is a large volume of biopsies to be examined. If all slides had to be personally reviewed by a pathologist, as opposed to a trained technician under the direction of a pathologist, then the cost of the procedure might increase so significantly and the time for processing might increase so dramatically that the entire screening process could be rendered unworkable. I do not know whether anyone, other than apparently the healthcare industry, has made this "cost/benefit" analysis. But if the industry accepts this procedure, it is difficult to contend that the use of a technician to read the biopsy slide is itself negligent. Of course, it remains possible to show negligence in the selection of the technician or the technician's active negligence. Just as would be the case if the pathologist himself had incorrectly read the biopsy slide.
[4] Plaintiff's expert had the benefit of viewing not only the 1994 biopsy slide but also the 1995 slide which had also been read negative as well as the 1996 biopsy results which proved positive. He found that the 1994 slide contained abnormal cell groups "consistent" with adenocarcinoma and which "correlated well" with the cervical biopsy. What does this mean? Could not the 1994 slide, based solely on the image reflected thereon utilizing an acceptable protocol, justify a negative reading and yet, over two years later and after review of additional slides depicting a progressive change in plaintiff's condition, nevertheless be consistent with and correlate with the subsequent "cervical biopsy"? A defense expert, given the opportunity to examine the 1994 slide, might well opine that based on that slide alone, it was not below the industry standard of care to determine the biopsy negative.