762 So.2d 1014 (2000)
Jacqueline TORRES and Carlos Torres, etc., Appellant,
v.
MATSUSHITA ELECTRIC CORPORATION, etc., Appellee.
No. 5D98-3385.
District Court of Appeal of Florida, Fifth District.
July 14, 2000.
Brian W. Smith, West Palm Beach, for Appellant.
Esther E. Galicia of George, Hartz, Lundeen, Flagg & Fulmer, Fort Lauderdale, for Appellee.
EN BANC
PER CURIAM.
Jacqueline Torres, after suffering injuries from a fire involving a vacuum cleaner, took pictures of the vacuum and delivered the vacuum to a "safety specialist" who, after examining the vacuum, delivered it to plaintiffs' lawyer who stored it in his garage until it was thrown out with the garbage.
Plaintiffs sued the purported manufacturer of the vacuum which Torres alleges she owned and operated for approximately *1015 six years.[1] She claimed liability on two theories: (1) strict liability based on manufacturing defects and (2) negligent design "which directly and in natural and continuous sequence" caused her injury.
Discovery in this cause was completed and pretrial statements had been filed. In her statement, plaintiff listed Jon Draper as an expert witness. Draper, perhaps plaintiffs' only non-medical expert, appears to have been the "safety specialist" to whom the vacuum was originally delivered and who opined in a report: "the most likely cause of the fire in my opinion is heat internally generated in the vacuum causing combustion of the material in the dirt bag or construction material from the vacuum."[2]
Defendant, upon discovering the spoliation of evidence in this case, moved for dismissal with prejudice claiming:
Defendant MECA is faced with the inability to ... set forth their defense based on the fact that it has been deprived of the opportunity to examine and test the vacuum cleaner at issue in this case. Such an inspection, it should be noted, would constitute a vital aspect of Defendant MECA's investigation and defense of this matter, particularly since they have never had another of the vacuums or similar products they sell or distribute catch fire, let alone "explode." Likewise, without the opportunity to test and inspect the vacuum, the Defendant cannot even confirm that the vacuum cleaner, if any, by which Plaintiff was injured was in fact a Matsushita MC-5190-1. In fact, and as is noted above, the Plaintiffs themselves (as evidenced in paragraph eight of their Complaint) are merely alleging that "based on the circumstances and available evidence, the most likely cause of the fire was a manufacturing and/or design defect within the vacuum cleaner manufactured by Matsushita." The "available evidence" to the Plaintiffs include the vacuum cleaner at issue in this case; however, Defendant MECA has been completely and unfairly deprived of the opportunity to test, analyze, or inspect such evidence.
Plaintiff responded as follows:
In the instant case, both Plaintiff and Defendant are inconvenienced by the loss of the vacuum cleaner, but neither is precluded from asserting their claim or defense. Plaintiff can establish a submissible case by the use of the Greco inference ... and through a theory of defective design. Plaintiffs expert is expected to testify that a design defect existed within the product that caused or contributed to causing Plaintiffs injuries. This can be accomplished through the analysis of an identical unit and information and documents that exist relative to the unit/model number. The Defendant can rebut the design defect theory without an opportunity to inspect or test the vacuum involved in this incident.[3] Defendant is free to inspect the unit the Plaintiff intends to use at trial and is in as good a position, if not much better, to evaluate the data and literature regarding the model involved.
*1016 The trial court granted the motion to dismiss with prejudice holding:
Plaintiffs expert would have testified at trial in this matter that the fire started in the Defendant's vacuum cleaner. This is a critical issue in this case. The inadvertent or accidental loss or destruction of the vacuum cleaner, while in custody of Plaintiffs attorney ... is a critical issue to the Defendant, as it precludes any form of examination by the Defendant or the Defendant's expert. The Defendant is precluded from testing whether or not it is Defendant's product. Moreover, the Defendant is precluded from testing whether or not the product was modified, and the Defendant is precluded from testing whether or not the product has been broken or misused. The Defendant is further precluded from testing the causation of the fire or any examination of the alleged defective product.
Appellant concedes that its manufacturing defect claim can be proved only with the Greco inference.[4]Greco v. Bucciconi Eng'g Co., 283 F.Supp. 978 (W.D.Pa.1967). The court in Cassisi v. Maytag Co., 396 So.2d 1140 (Fla. 1st DCA 1981), explained that the most vivid portrayals of the Greco inference are those cases in which the product is consumed by the malfunction so that it is impossible to point with specificity to one of many possible causes. In such cases, the malfunction itself raises an inference that the product was defective and that the defect caused the malfunction. However, this inference may be rebutted, explains Cassisi, by proof of the product's age, the length of the product's use, the severity of its use, the state of its repair, its expected useful life, and whether it was subjected to any abnormal operation.
Because Plaintiff admitted that she kept no receipt, packaging, or warranty materials that came with the vacuum and because the photographs of the vacuum she did maintain (and which are in the record) do not show the make or model number of the machine or even enough of the vacuum to make any reasonable identification, it is only her unchallengeable testimony that the vacuum at issue was designed or manufactured by defendant which ties defendant to this cause. The trial court believed it unfair to permit plaintiffs' unsubstantiated allegation that the alleged defective vacuum was indeed manufactured by defendant when defendant was denied the ability to challenge this critical allegation because of plaintiffs' negligence.
Further, even if the vacuum is connected to this defendant, defendant has been denied the opportunity to determine *1017 the actual age of the particular vacuum, its length of service, the severity of its use, its state of repair, and whether it was subjected to any abnormal operation, and it was denied this opportunity because of the negligence of plaintiff through her lawyer. We have found no case in which the Greco inference has been applied when the product, rather than being destroyed by the malfunction, is unavailable because of plaintiff's negligent destruction of evidence. The extension of Greco to spoliation cases would be a precedent which invites fraud.
The trial judge could have merely precluded plaintiff from presenting her expert who had examined the product because her negligence denied defendant the opportunity of having its own independent expert. See Metropolitan Dade County v. Bermudez, 648 So.2d 197, 200 (Fla. 1st DCA 1994). But then what would plaintiff have left? She would have only her testimony that this six-year-old vacuum with a design defect which had never previously malfunctioned caught fire on that fateful day. Whether the design defect caused the fire, she cannot say. Without the vacuum cleaner, and expert testimony relating to it, she cannot prove that the fire resulted from the negligence of defendant. She thus hopes to avoid this evidentiary problem by relying on the Greco inference. The trial judge refused to give her this inference because her negligence, not the fact that the product was totally consumed by the malfunction, barred defendant from the opportunity to examine the vacuum.
Appellant urges that even if she is denied expert testimony relating to the particular vacuum involved in this action, she should nevertheless be permitted to proceed on her negligent design theory. Here, she contends, all she needs to prove is that (1) there is a design defect and (2) the design defect caused her injuries. It is (2), the requirement that she prove proximate cause, that is insurmountable under the facts of this case. If the design defect necessarily caused the fire which caused her injury, why did it take six years to do so? In other words, why did the vacuum not burst into flame the first time it was plugged in? If the design defect was such that it would cause a fire only after a certain amount of wear, then reference to the particular vacuum is essential in order to show that such wear occurredotherwise, no proximate cause. And even if a design defect might have caused the fire after appreciable wear, there are other possible explanations not chargeable to defendant which might also have caused the fireimproper repair, failure to maintain the vacuum, maltreatment of the vacuum (electrical wires frayed and exposed), substitution of parts, etc. Thus, in a design defect case in which the design defect is alleged to be only a potential problem, such as the one herein, reference to the particular vacuum is essential. Without Greco, plaintiff cannot prevail on either theory. We are unwilling to extend Greco to spoliation cases. Therefore, even if the court should have merely stricken the expert witness and denied a Greco inference, rather than dismiss the action as it did, the effect is the same.[5] All discovery was completed and the court was aware of the parties' positions. It knew that by striking the witness and denying the inference, plaintiff could not, as a matter of law, prevail on either count so it dismissed the action. In DeLong v. A-Top Air Conditioning Co., 710 So.2d 706, 707 (Fla. 3d DCA 1998), the Third District held:
Michael DeLong and his wife, plaintiffs below, appeal the dismissal of their personal injury action with prejudice based on spoliation of evidence after DeLong inadvertently lost or misplaced a piece of relevant and material evidence. After a careful review of the record before us, *1018 we cannot conclude that the lower court abused its discretion in imposing the ultimate sanction of dismissal with prejudice where the appellees demonstrated their inability to completely set forth their defense without having the opportunity to examine and test the lost evidence.
The standard of our review on this appeal is whether the trial judge abused his discretion. Federal Ins. Co. v. Allister Mfg. Co., 622 So.2d 1348 (Fla. 4th DCA 1993). We find he did not and affirm.
AFFIRMED.
THOMPSON, C.J., PETERSON, SAWAYA, and PLEUS, JJ., concur.
COBB, J., concurs and concurs specially, with opinion.
HARRIS, J., concurs and concurs specially, with opinion, in which COBB, J., concurs.
DAUKSCH, J., dissents, with opinion.
GRIFFIN, J., dissents, with opinion in which W. SHARP, J., concurs.
COBB, J., concurring and concurring specially.
The dissent's assertion that the fact that the loss of the evidence (i.e., the vacuum cleaner) was inadvertent rather than intentional mandates reversal of the trial court is in direct conflict with the most recent applicable opinion from the Third District. See DeLong v. A-Top Air Conditioning Co., 710 So.2d 706 (Fla. 3d DCA 1998). The intent of the party responsible for the spoilation is irrelevant; the issue is fairness to the adverse party, whether plaintiff or defendant. Moreover, in the Miller spoilation case relied upon by the dissent, the plaintiff was able to testify as to the specific defect at issue (the accelerator stuck). Accord Gencorp, Inc. v. Wolfe, 481 So.2d 109 (Fla. 1st DCA 1985), rev. den., 491 So.2d 281 (Fla.1986)(witness, who examined tire before it was lost, able to testify that nearly new tire, which separated causing blowout, did so where tread and sidewall met). In the instant case plaintiff is unable to identify any defect. She can only testify that for some unknown reason her 6-year old vacuum cleaner exploded.
HARRIS, J.,' concurring and concurring specially:
In this response to Judge Griffin's dissent I should first confess that I am most impressed with Robert Browning's admonition in Andre del Santo [1855]:
The common problem, yours, mine, everyone's
Isnot to fancy what were fair in life
Provided it could bebut, finding first
What may be, then find how to make it fair
Up to our means.
Even if Life isn't fair, judges should endeavor, when the opportunity presents itself and it is legitimately within our means to do so, to assure that law is. This means that all parties to any litigation should compete on a level playing field unless inclines are placed on the field based on some recognized legal theory and even then the incline should be only as steep as justified by the legal theory authorizing it.
I disagree with two opinions expressed in the dissent.
First, the dissent opines that there is no duty placed on this plaintiff who had in her possession the allegedly defective product on which she intended to base a product liability action to preserve such product so that the manufacturer would have an opportunity to examine it. This is so, says the dissent, even if the inability to examine the product denies the manufacturer the opportunity to present a meaningful defense. That is not, nor should it be, the law. See DeLong v. A-Top Air Conditioning Co., 710 So.2d 706 (Fla. 3d DCA 1998). See also Hernandez v. Pino, 482 So.2d 450, 453 (Fla. 3d DCA 1986):

*1019 Ordinarily where a party in possession loses or destroys crucial record evidence a burden is imposed on that party to prove that the loss or destruction was not in bad faith ... Assuming [no bad faith], the next inquiry would be whether [the opposing party] will be unable to mount a defense without them.
The court in Callahan v. Stanley Works, 306 N.J.Super. 488, 703 A.2d 1014, 1016-17 (Law Div.1997), recognized that much of the same policy reasons behind condemning willful destruction of evidence also applies to the negligent destruction or loss of evidence:
The state's system of civil litigation is founded in large part on a litigant's ability under the authority of the Supreme Court rules, to investigate and uncover evidence after filing suit. Destruction of evidence known to be relevant to pending litigation violates the spirit of liberal discovery.
* * *
Spoliation of evidence creates enormous costs for both the victimized party and the judicial system, prevents fair and proper adjudication of the issues, and interferes with the administration of justice.
* * *
Recognition of the tort of negligent spoliation of evidence would likely reduce the possibility of negligent as well as intentional destruction of evidence by putting individuals, business, and governmental entities on notice of acceptable behavior. The increased availability of relevant evidence would in turn further an individual's due process right to have one's grievance heard by a court of competent jurisdiction utilizing all relevant evidence. The failure to recognize negligent spoliation as a separate tort would invite destruction or suppression or relevant evidence by an opponent or third party, thus creating or continuing the perception that individual due process rights are unimportant or are somehow being trampled by the judicial system itself.
The "duty" to preserve evidence may arise through an agreement, expressed or implied, by statute, or other "special circumstances." See Boyd v. Travelers Ins. Co., 166 Ill.2d 188, 209 Ill.Dec. 727, 652 N.E.2d 267, 270 (1995). If one knows that he, she, or it is about to become involved in a civil action, this alone should be sufficient special circumstances to impose a duty of care to preserve such evidence in such potential party's possession that a reasonable person would foresee is material to that action. How can it legitimately be argued that a plaintiff who can sue the defendant, or even a third party, who loses evidence which is known to be relevant to a contemplated law suit has no duty to maintain evidence available to plaintiff and which plaintiff knows is relevant to his or her contemplated action?
Judge Griffin's other opinion expressed in her dissent with which I disagree is that the Greco inference should apply to this case. She opines that even though plaintiff herein, through the negligent action of her agent, has denied the defendant the opportunity to mount a meaningful defense, she should nevertheless receive the burden-shifting Greco inference. Under the facts of this case, that would be tantamount to directing a verdict against defendant without permitting it to defend. Judge Griffin's authority for this proposition is Miller v. Allstate Insurance Co., 650 So.2d 671 (Fla. 3d DCA 1995), which denied judgment against the third party guilty of spoliation of evidence unless and until it could be shown that it was the loss of the evidence that prevented plaintiff from prevailing on the claim against the manufacturer. The court indicated that the plaintiff might yet prevail in the product liability action by the application of the Greco inference against the manufacturer who was not a party to the action.
*1020 In Miller, the plaintiff drove her automobile into a wall injuring her passenger. Miller claimed the accident was caused because the accelerator stuck. Fearing a potential law suit by the passenger, the insurer (Allstate) asked to inspect the vehicle. After assuring Miller that it would return the vehicle to her so that she could have it inspected by her expert (and perhaps after the passenger's claim was settled), Allstate disposed of the vehicle. Miller sued Allstate claiming that its negligent loss of the vehicle prevented her from pursuing her action against the manufacturer.
The Miller court, without discussing the inevitable argument that would be made by the manufacturer, held that Allstate could not be sued unless the manufacturer was first sued or joined in the same action so that it could be determined whether plaintiff would have prevailed on her product liability action "but for" the loss of the product. But suppose the manufacturer was joined in the action and moved for the production of the vehicle so that its experts could examine the vehicle to determine whether the accelerator stuck or whether plaintiff merely put her foot on the accelerator instead of the brake. Even if the Greco inference might otherwise be available, it is the negligence of plaintiff in failing to maintain the evidence, and not the result of an alleged malfunction, which has denied the defendant the opportunity to properly defend and has thus made irrebuttable an otherwise rebuttable inference. We do not know, if the manufacturer had raised spoliation as a basis for dismissing the action against it, how the Miller court would have ruled.
Greco recognizes an inference that if a product malfunctions during normal operations, it is because of a defective condition. The practical result of this inference is that a prima facie case is established for plaintiff and in order to avoid an adverse judgment, the defendant must rebut the inference of defect. In Greco, the product remained available to the defendant and its experts in order that a rebuttal was possible. Defendant could have rebutted the inference by affirmatively showing misuse of the product, its improper state of repair, or its abnormal operation. In Greco, and in all other cases applying the Greco inference that I have found, unless the product was consumed by the malfunction or the malfunction so damaged the product as to make it incapable of meaningful examination, the defendant had the opportunity to rebut the inference.
Indeed, Cassisi v. Maytag Co., 396 So.2d 1140, 1151 (Fla. 1st DCA 1981), in adopting the Greco inference, recognized:
Considering the complexities of products litigation, and again the policy factors of Section 402A, such a solution is the better reasoned one since it is the manufacturerrather than the plaintiffwhich presumably is in the better position to produce the technical evidence required for determining the existence of a product's defect.
This is true, of course, only if the product is available for the manufacturer to examine.
The same policy concerns that support the tort of negligent spoliation militate against applying the Greco inference when plaintiff's negligence has rendered a meaningful defense impossible. It would encourage fraud, reward plaintiff's negligence by making the rebuttable inference irrebuttable, and deny defendant, solely because of plaintiff's negligence, its due process right to present a defense.
COBB, J., concurs.
DAUKSCH, J., dissenting.
I respectfully dissent.
As the majority opinion explains, this case was terminated below upon a motion to dismiss. The case did not end as a result of a summary judgment or a directed verdict or a jury verdict or any other order entered after submission of evidence. Thus it was dismissed on the *1021 pleadings. Prematurely, in my opinion. Dismissal on the pleadings should not be the sanction for loss or destruction of evidence, especially when the party who is responsible for the loss or destruction may be able to present evidence to support its claim or its defense notwithstanding the loss of the evidence. Although I am not able to know what evidence the plaintiff may have in this case, because none was taken except in discovery, I can imagine some could exist to support the claim of a design or manufacturing defect. Therefore I would reverse for proceedings beyond the pleading stage.
GRIFFIN, J., dissenting.
I respectfully dissent.
There has always been a risk that this court would be unable to resist taking the course it now follows as set forth in the majority opinion. See Aldrich v. Roche Biomedical Labs., Inc., 737 So.2d 1124 (Fla. 5th DCA 1999) (Harris, J. dissenting), review denied, 751 So.2d 1250 (Fla. 2000). In that case, the minority view was that if evidence existed that was destroyed and the defendants were shown to have played no role in the destruction, then the defendants should be relieved of the burden of litigation. Apparently, the theory is that the loss of the "value of a chance" for a defendant to find a defense in the lost evidence creates an unacceptable level of unfairness to the defendant that requires cessation of litigation. Although this case does not yet bring us quite that far, we are very close. In order to get there, however, I believe the majority has distorted the Greco inference. I also believe the majority opinion is in conflict with Miller v. Allstate Insurance Co., 650 So.2d 671 (Fla. 3d DCA), review denied, 659 So.2d 1087 (Fla.1995).
This case actually presents a more typical "spoilation" problem than the one that existed in Aldrich. Here, although no one can explain why the remaining fragments of the burned vacuum cleaner went missing, it appears clear that they disappeared while in the custody of plaintiff's attorney. He had stored them in his family garage, from whence they disappeared. Given their condition, plaintiffs theorize that they were mistaken for trash and discarded. There is no suggestion that the loss of the vacuum cleaner remains was anything other than inadvertent. If this were an intentional spoilation case, the result reached by the majority would be correct, but where evidence is lost by inadvertence or negligence of an agent, a different balancing of competing considerations should occur. I begin with the (apparently controversial) proposition that a party does not have the duty to preserve evidence. Although a defendant should not be harmed by the disappearance of previously available evidence, it should not benefit either. If evidence is preserved, however, it has to be equally available to the parties and any demonstrable prejudice (not speculative prejudice) has to be eliminated.
In the Miller case, the plaintiff had been injured when her new Cadillac crashed into a wall, assertedly because the vehicle's accelerator stuck. Plaintiff's insurer took possession of the vehicle. They then failed to preserve the vehicle as promised. Judge Cope explained in Miller that:
Even in a products liability setting where evidence has been lost, the primary wrongdoer is the manufacturer of the defective product. The person who lost the evidence has created problems of proof for the plaintiff, but the entire liability should not shift from the manufacturer to the person who lost the evidence unless the loss of evidence has so fatally impaired the products liability claim that to bring a products liability action would be frivolous.
650 So.2d at 674. This analysis is consistent with prevailing Florida law. The Miller court went on to explain that the plaintiff could not assert a cause of action against its insurer for loss of the critical evidence because even without the vehicle, the plaintiff was entitled to press its claim against General Motors based on the product *1022 defect inference recognized in the case of Cassisi v. Maytag Co., 396 So.2d 1140 (Fla. 1st DCA 1981). Cassisi approved the decision in Greco v. Bucciconi Engineering Co., 283 F.Supp. 978 (W.D.Pa. 1967), affirmed, 407 F.2d 87 (3d Cir.1969). Simply stated, the Greco inference provides that when a product malfunctions during normal operation, a legal inference arises that a defect exists thereby establishing a prima facie case for jury consideration. Id. Contrary to the majority opinion, there is no such thing as "extending" the Greco inference to spoilation cases. The Greco inference arose the minute this vacuum cleaner caught fire while being used to vacuum a floor. It persists whether the vacuum cleaner is completely consumed, or not; if the remains are swept up and discarded, or not; if some part is salvaged and preserved through trial, or not. See Miller, 650 So.2d at 675 n. 4.
There is no doubt that the appropriate remedy for the plaintiffs failure to preserve the remnants of the vacuum cleaner could extend as far as depriving the plaintiff of all benefit from her possession of the fragments after the fire. This would include preclusion of testimony by her expert who examined the fragments. It is right to create a level playing field by depriving the plaintiff of her unequal access to direct evidence; it is wrong, however, to go further and deprive the plaintiff of her ability to prove her case independently by circumstantial evidence. The law, for good reason, has long recognized that where a product used in its ordinary way for its intended purpose malfunctions and causes injury, an inference of a defect properly arises. It does not matter how much of the offending product survives or in what condition. By not only eliminating the direct evidence of the malfunction but by depriving the plaintiff of the otherwise available Greco inference, this court has now done indirectly what the panel refused to do in Aldrich.
Worse yet, the majority decision in this case is tantamount to a decision that a defendant has a right to the preservation of evidence by the plaintiff. The majority signals its tilt toward the creation of a duty on the part of a plaintiff to preserve evidence when it finds unfairness in the defendant's inability to (maybe) disprove the plaintiffs testimony that hers was a Panasonic vacuum by examining the remnants. To my knowledge, Florida law has never found the plaintiffs identification of the product without corroboration through tangible evidence to be unfair. The distance between the duty not to lose evidence and the duty to gather evidence is very small, as this statement shows. If the plaintiff does not preserve whatever evidence may be available that could be of use to the defendant, then the plaintiff should be precluded from prosecuting his case. In my view, it is preferable from a policy standpoint to equate the level of punishment with the level of fault. Otherwise, we simply replace the lawsuit against the manufacturer of the defective product with a lawsuit against whoever was responsible for the loss of the evidence.
W. SHARP, J., concurs.
NOTES
[1] There is some confusion even as to the age of the vacuum. The complaint and briefs assert six years but Mr. Torres in his deposition claims one year; Ms. Torres claims two years.
[2] This opinion raises even more questions than it answers. Was the internal heat normal or excessive? If excessive, did it result from design error or manufacturing error or did it result from product abuse? Did the material in the dirt bag catch fire within the bag or did the bag overflow because it was never cleaned in accordance with manufacturer's instructions? Was there something inherently wrong with the dirt bag or had the dirt bag not been changed in six years?
[3] This assumes, of course, that if plaintiff is able to show a general design defect, then the design defect must have eventually caused the fire in this specific vacuum. This reasoning is flawed. It might be that an inspection of the vacuum would have shown that the fire was caused not by the design defect but, as an example, because of a frayed electrical wire caused by product abuse.
[4] Ms. Torres' position, reduced to its simplest form, is:

"Matsushita, give me money because I say I purchased a vacuum designed and manufactured by you six years ago and today I was injured by it. You were negligent because I say the fire which caused my injury originated from within the vacuum. I'm sorry I no longer have the vacuum for you to inspect but I assure you it was accidently lost and, in any event, it was severely damaged. What do you say?"
"Well," responds Matsushita, "we admit we manufacture and market vacuum cleaners so it is possible you purchased one. Further, even though a fire has never been reported in one of our vacuums, we cannot say that such a fire is scientifically impossible. If we had the damaged vacuum it is almost certain that we could at least determine whether it is one of ours. And, since it is possible to determine the cause of a malfunction of an aircraft from thousands of parts strewn over a large area and over a mile beneath the surface of the ocean, we know experts can do a great deal with very little. It is most likely that had we been given the chance, our experts could determine whether the fire involving this vacuum which had operated perfectly for six years was caused by design or manufacturing defect or because of improper maintenance, shoddy repair, or product abuse. We are denied this opportunity because of your negligence."
"Whatever. The fact remains that you cannot refute my allegations and the law does not care why. Therefore, the jury should be able to give me some of your money."
If that is the law, it is law in which a fair person cannot take pride and a careful person cannot take comfort.
[5] It seems certain that had defendant lost the vacuum before it could be examined by plaintiff's expert, "dismissal" of its defenses would have been granted by striking its pleadings and entering a default on liability. See Rockwell Int'l Corp. v. Menzies, 561 So.2d 677 (Fla. 3d DCA 1990); Sponco Mfg., Inc. v. Alcover, 656 So.2d 629 (Fla. 3d DCA 1995).