NORTHCUTT, Judge.
 

 Brandon Murray, the eleven-year-old son of Richard and Angelina Murray, was severely burned when vapors from a can of fuel meant for use in a remote controlled model vehicle ignited. His parents filed suit on his behalf against companies involved in the design, production, and sale of the fuel and the fuel can. The Murrays asserted various theories, including negligent defective design, negligent failure to warn, strict liability for defective design, and strict liability for failure to warn. In several orders over the course of the litigation the circuit court granted summary judgments to all of the defendants on all of the counts. The Murrays have focused their appellate challenge on the issue of whether defendants Traxxas Corp. and Powermaster Hobby Products, Inc., were entitled to summary judgment on the Mur-rays’ negligent design claim.
 
 [1]
 
 We conclude that summary judgment should not have been granted on this claim.
 

 Summary judgment is proper “only if (1) no genuine issue of material fact exists, viewing every possible inference in favor of the party against whom summary judgment has been entered, and (2) the moving party is entitled to a judgment as a matter of law.”
 
 Cannon v. Fournier,
 
 57 So.3d 875, 881 (Fla. 2d DCA 2011) (internal citation omitted). “If the record reflects the existence of any genuine issue of material fact or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist, summary judgment is improper.”
 
 Holland v. Verheul,
 
 583 So.2d 788, 789 (Fla. 2d DCA 1991);
 
 see also Estate of Githens ex rel. Seaman v. Bon Secours-Maria Manor Nursing Care Ctr., Inc.,
 
 928 So.2d 1272, 1274 (Fla. 2d DCA 2006).
 

 In this case, the deposition testimony reflects that Brandon was injured while he and his older brother Chastin were visiting their grandparents, the Coopers. The boys decided to start a fire in order to roast marshmallows. They gathered sticks and leaves, placed them in an empty food can on a backyard patio, and tried to ignite them with a lighter they had taken from their grandparents’ kitchen. But the leaves would not burn.
 

 At that point, Chastin set out in search of something they could use to start the fire. In a shed that his grandfather used for storing tools and lawn equipment, Chastin spied a can of Top Fuel. The fuel had been stored there by the boys’ uncle, James Roach, who had purchased it several years previously for use in a remote-controlled model truck that he later sold. Chastin took the fuel, believing he could use it as lighter fluid.
 

 When Chastin returned to the patio, Brandon was still attempting to burn a leaf with the lighter. As Brandon squatted over a leaf about four to five feet away from the can of leaves, Chastin stood over the can and began tipping the Top Fuel container to pour the fuel on the leaves. In the instant before any fuel poured out, Brandon “flicked the lighter and it just went boom.” The explosion startled Chas-
 
 *693
 
 tin, who rocked backwards, and the fuel “blew out” of the Top Fuel can onto Brandon.
 

 Later, Chastin recounted that he did not see any flames, “just like a liquid or something” that just “blew out and ... got all over everything.” Brandon started screaming, and Chastin saw his brother’s clothes and “skin ... melting off.” Chas-tin grabbed a garden hose and began soaking his brother. Their grandfather heard their screams, as did a neighbor who called 911. Brandon was airlifted to the hospital.
 

 A city fire inspector arrived soon after. All the family members were at the hospital, but the inspector photographed the scene and took one close-up picture of the Top Fuel can, which was still on the patio. He inspected the can that day and again several days later, when he returned to interview the family members. Brandon and Chastin also saw the can on the patio and both described it as “bowed out.”
 

 Sometime after the accident, the boys’ mother and Mrs. Cooper prevailed upon Mr. Cooper to dispose of the Top Fuel can. They were concerned that it might be dangerous.
 

 By the time of the hearing giving rise to the summary judgment under review, the only claim the Murrays were asserting was negligence based on a design defect in the fuel can. To prove their action based on negligent design, the Murrays must show that the defendants owed them a duty, that the defendants breached the duty, that the breach was the proximate cause of Brandon’s injuries, and that the Murrays suffered damages resulting from those injuries.
 
 See Vincent v. C.R. Bard, Inc.,
 
 944 So.2d 1083, 1085 (Fla. 2d DCA 2006). Their theory was that Brandon was injured in a “flashback” explosion that would not have occurred if the fuel container had not been negligently designed.
 

 Both the Murrays and the defendants had filed evidence to support their respective positions. Traxxas and Powermaster emphasized that the city fire marshal and a fire inspector had investigated the accident and that neither of them thought that a flame-thrower event had occurred. The defendants had also retained an expert engineer who opined that the Top Fuel container could not have produced a flashback explosion.
 

 The Murrays countered with the affidavit of an expert in fire chemistry, flammable liquids, and fire explosion investigation. He had considered the deposition testimony, the fire inspector’s photograph of the Top Fuel can, and an exemplar of the can. Based on his expertise, he opined that the accident resulted from a flashback explosion. He stated in his affidavit:
 

 An inspection of the photograph of the can establishes the fact that an overpressure event occurred inside the container. This is a result of internal pressure. The deformities occur along the seams at the top and bottom corners of the can. This indicates internal pressure and rules out any physical trauma applied to the can. Second, the spout on the top of the can is leaning slightly to the left. This suggests the top of the can was also distended as a result of internal pressure.
 

 In the expert’s opinion, the fuel container was defectively designed. He stated that the incorporation of a simple, inexpensive “flame arrestor” in the design of the can would have prevented the incident. He noted that flame arrestors are readily available on the market and have been incorporated by other manufacturers into similar fuel cans. Based on his analysis of the accident and his understanding of the functionality of flame arrestors, the Mur-rays’ expert concluded that Traxxas and Powermaster were negligent for not equip
 
 *694
 
 ping the fuel can with such a readily available device.
 

 At the conclusion of the hearing, the circuit court orally ruled in the defendants’ favor. It grounded its decision on the fact that the Top Fuel can had been disposed of and was not available for examination, basing its reasoning on the case of
 
 Torres v. Matsushita Electric Corp.,
 
 762 So.2d 1014 (Fla. 5th DCA 2000). The court stated:
 

 Without the can, the undisputed facts, there’s no proof of plaintiffs’ theory of liability, that this can had a flame-thrower or flashback effect.
 

 [T]here’s no way to prove and there is no proof in the record that the fuel contained in this can was Powermaster manufactured fuel manufactured for Traxxas, because it had been stored in an unsecured facility, accessed by anybody for two years. No one knows what condition may have changed in that fuel, whether it is even the fuel that was originally in the can, because the can was done away with.
 

 The can couldn’t be tested, examined by experts as to whether this ... flamethrower effect had occurred. And that’s the theory of the case, and it can’t be proved without the can.
 

 As can be seen from the circuit court’s remarks, its ruling hinged on its belief that the Murrays could never meet their burden to prove that a design defect caused the accident in which Brandon was injured because the can of Top Fuel had been discarded. The court identified two problems stemming from the fact that the fuel can no longer existed.
 

 First, it observed that there was no way to show whether the original fuel was in the can at the time of the accident or whether it might have been tampered with or replaced by some other fuel. We note that the court’s observation that the fuel had been stored in “an unsecured facility, accessed by anybody” was factually inaccurate. To the contrary, the Murrays presented evidence of an unbroken chain of custody from the time the fuel was purchased to the date of the accident. Roach testified that he bought the Traxxas Top Fuel and the remote-controlled truck in the same transaction at a hobby shop. Chastin remembered going to the store with his uncle when the fuel was purchased, and the shop’s sales records confirmed that Roach had purchased Top Fuel. The shop owner testified that he carried Traxxas Top Fuel at the time, and he recognized from the photograph of the can involved in the accident that it was the kind of Traxxas Top Fuel he sold.
 

 Roach testified that he placed the partially used can of Top Fuel on a shelf in the Coopers’ shed about two years before the accident. Mr. Cooper testified that he never used the fuel; “it was just set in the shed and kept with the other paints and other gas and stuff.” He kept his shed locked except when he was mowing the grass. On the day of the accident, he had unlocked the shed to access his tools or lawnmower.
 

 Certainly, the Murrays presented sufficient circumstantial evidence to support a finding that, at the time of the accident, the can contained the fuel that Roach purchased from the hobby shop. On the defendants’ motion for summary judgment, the Murrays were entitled to that inference. The defendants presented no evidence that suggested otherwise, and speculation about what might have happened to the fuel if some unknown person had gained access to the locked shed was not a proper basis for a summary judgment.
 
 Cf. Carter v. Cessna Fin. Corp.,
 
 498 So.2d 1319, 1321 (Fla. 4th DCA 1986) (noting that “speculation, surmise and conjecture,
 
 *695
 
 are inadmissible at trial and legally insufficient to create a disputed issue of fact” in a summary judgment proceeding).
 

 The upshot of the court’s theory was that it failed to construe the evidence in the light most favorable to the Murrays, as it was required to do on the defendants’ motion for summary judgment.
 
 See Cannon,
 
 57 So.3d at 881;
 
 Castellano v. Raynor,
 
 725 So.2d 1197 (Fla. 2d DCA 1999). Further, the court relieved the defendants of their burden to demonstrate through competent evidence the nonexistence of a material fact concerning the identity of the fuel in their can.
 
 See Holl v. Talcott,
 
 191 So.2d 40, 43-44 (Fla.1966).
 

 The court also ventured that the Murrays could not prove the design defect because the specific can that was involved in the accident could not be examined and tested. But the can had been observed by eyewitnesses to the accident, and it had been inspected and photographed by the fire inspector shortly afterward. The shopkeeper who sold the fuel to Roach viewed the photograph and identified it as a Traxxas Top Fuel can. The experts who reviewed the available evidence, including an exemplar of the can, were able to opine as to the nature of the explosion, how it occurred, and whether the incorporation of a flame arrestor in the design of the fuel can would have prevented the accident.
 

 These circumstances distinguish this case from
 
 Torres,
 
 on which the circuit court relied. In that case, the plaintiffs attempted to assert a negligence claim based on a defect in a vacuum cleaner that supposedly started a fire. Unlike the situation here, in
 
 Torres
 
 it was unclear who manufactured the vacuum or how old it was. 762 So.2d at 1016-17. The only expert testimony on causation was that “the most likely” problem was that heat internally generated in the vacuum caused “combustion of the material in the dirt bag,” or in the vacuum itself.
 
 Id.
 
 at 1015. As the
 
 Torres
 
 court noted:
 

 If the design defect necessarily caused the fire which caused her injury, why did it take six years to do so? In other words, why did the vacuum not burst into flame the first time it was plugged in? If the design defect was such that it would cause a fire only after a certain amount of wear, then reference to the particular vacuum is essential in order to show that such wear occurred — otherwise, no proximate cause. And even if a design defect
 
 might
 
 have caused the fire after appreciable wear, there are other possible explanations not chargeable to defendant which might also have caused the fire — improper repair, failure to maintain the vacuum, maltreatment of the vacuum (electrical wires frayed and exposed), substitution of parts, etc. Thus, in a design defect case in which the design defect is alleged to be only a potential problem, such as the one herein, reference to the particular vacuum is essential.
 

 Id.
 
 at 1017.
 

 Here, unlike
 
 Torres,
 
 the Murrays’ design defect theory rests on the undisputed fact that Top Fuel cans were not equipped with fuel arrestors. This simple thesis does not require testing of the specific can involved in the accident. In fact, we question whether it would have been possible to test that can, given its condition after the explosion. In order to prove or disprove whether Top Fuel cans are subject to flashback explosions that could be prevented by fuel arrestors, both parties can conduct experiments on similar Top Fuel cans.
 
 Cf. Reed v. Alpha Prof l Tools,
 
 975 So.2d 1202, 1204 (Fla. 5th DCA 2008) (distinguishing
 
 Torres
 
 where the plaintiffs asserted that they could prove their claims of strict liability, negligence, and failure to warn based on the photographs of the
 
 *696
 
 destroyed, allegedly defective product, and other specimens of the product; dismissal based on spoliation of evidence reversed).
 

 We reverse the summary judgment in favor of Traxxas and Powermaster on the Murrays’ negligent design claim, and we remand for further proceedings.
 

 SILBERMAN, C.J., and DAVIS, J., Concur.
 

 [1]
 

 . The Murrays have dismissed their appeals against the other defendants who were granted summary judgment.