PER CURIAM.
Appellee Biltmore Court Villas, Inc., owner of land in Coral Gables, .contracted with L. Milton Construction Corporation (Milton) for the construction of certain condominium town houses. This contract excluded certain enumerated items[1] involved in the total construction project. As to the excluded items, the owner contracted with other contractors. Appellant Ramon Garcia, an employee of Monterrey Builders of Miami, Inc., a subcontractor to Milton, was badly injured while working on the job site when he fell through an unbarricaded opening on the second floor balcony and landed below on accumulated broken concrete building blocks and other construction debris. Mr. Garcia, the injured employee, filed an action against Biltmore, the landowner, alleging and arguing that the owner actively participated in the construction project to the extent that the owner directly influenced the manner in which construction work was performed as a result of which the owner owed the injured employee a duty of reasonable care to provide a safe place to work which duty the owner breached by maintaining the unbarricaded opening in the second floor balcony through which the employee fell and by maintaining the accumulated construction debris on which the employee was injured. Alternatively, the injured employee claims the owner approved a dangerous condition on the land it owned.[2] After presentation of all evidence in a jury trial, the trial judge granted a timely motion for a directed ver-diet[3] in favor of the owner. The employee appeals.
The difference in this case between the views of the landowner and the views of the injured employee, as to the rights, duties, and proper relationship between landowners and contractors, and as to independent contractors and their employees, illustrate similar differences and views as to those matters that appear to often exist between persons in the construction industry and legal concepts involving those matters. The injured employee’s view appears to be (1) that as to new construction, there is, and should be, but one general contractor who is in exclusive control of the entire construction project; (2) that the owner should be uninterested in the construction during its progress and should properly remain passive, away from the construction job and out of sight; (3) that all specialty contractors who do only certain work or a segment of construction, such as masons, electricians, plumbers, carpenters, etc., are necessarily “subcontractors” no matter with whom they contract; and (4) that, without regard to the circumstances, because it is a part of the general contractor’s duties to correlate work between the different trades or “subcontractors”, anyone, including an owner, who contracts or deals directly with specialty contractors (“subcontractors”) is necessarily a general contractor in control of the premises and engaged in supervising the work with the attendant non-delegable duties to all employees on the project.[4]
*1175 Accordingly, the injured employee in this case, argues the following views of the facts in this case: (1) that because the owner’s contract with Milton was only for a portion of the project, by contracting directly with other specialty contractors (whom the employee regards as “subcontractors”) for the remaining portions of the project, the owner necessarily became a general contractor and a co-general contractor with Milton and thereby acquired a non-delegable duty to provide Milton’s employees and Milton’s subcontractors’ employees with a safe place in which to work; (2) that the owner’s actions in contracting with others for work not done by Milton constituted “activity” by the owner which encroached on the function of Milton as the “general contractor” thereby depriving the general contractor of the status of an independent contractor and subjecting the owner to liability for the negligence of Milton and Monterrey in failing to provide Monterrey’s employee with a safe place in which to work; (3) that the owner’s efforts during construction to inspect Milton’s work and to be sure that Milton’s work was performed in accordance with the specifications, constituted “interference and meddling” to the extent of assuming the detailed direction of the job which also served to destroy Milton’s status as an independent contractor and to subject the owner to liability for the negligence of Milton and the subcontractor Monterrey in failing to provide Monterrey’s employees with a safe place in which to work; and (4) that because the principal of the corporate owner, a Mr. Castro, was knowledgeable as to construction work and was seen on the construction site and “must have” seen the unbarricaded opening in the balcony and the accumulated construction debris, by not objecting to those conditions, the owner “approved” a dangerous condition on the premises subjecting the owner to direct liability for the negligence involved.
On the other hand, the owner takes the position that it can enter into any number of contracts with different people for one construction project to improve real property and that every person who enters into a contract with the owner for improvements is a contractor[5] and not a subcontractor and that by contracting with multiple contractors, the owner does not change its legal status from an owner to a general contractor. The owner also asserts that it had the right to inspect the work of Milton and the other contractors performing contractual work at the job site to determine if their work conformed to their contracts and had the right to communicate with the contractors about construction details and to reject unsatisfactory work and to require defective work to be corrected and to make suggestions and recommendations as to construction, all without destroying the independence of the contractor and usurping the contractor’s control over the contractor’s subcontractors and employees, and without establishing a master-servant relationship between the owner and the contractor’s and subcontractor’s employees.
We take it as established that Milton and Monterrey breached duties they owed to Monterrey’s injured employee to provide a safe place at which to work, and particularly a duty to barricade the opening in a second floor and to remove the accumulated construction debris. However, the evidence is that both Milton and Monterrey (and the other contractors) were independent contractors and that the construction job site (specifically those unsafe portions relevant to the employee’s accident and injuries) was in the possession and control of the contractor and not the owner. An owner is not liable for damages and injuries resulting from the negligence of an independent contractor including injuries sustained by an independent contractor’s employee on the job site.[6] In this case, the owner wrote the contractor Milton a series *1176 of letters about progress and details of the ongoing construction work but there is no competent evidence that the owner actively participated at the construction site or exercised any control over Milton or Monterrey as to method and manner of the performance of the actual construction work or as to safety practice and procedures of the independent contractors. Specifically, there is no evidence that the owner exercised or attempted to exercise any direction or control over Milton or Monterrey as to not barricading the opening in the second floor balcony or as to not removing the construction debris upon which the employee fell or that the owner otherwise directly or indirectly caused or contributed to the employee’s injuries. Nor is there any evidence that the owner exercised or attempted to exercise any direction or control over the injured employee in this case. Further, there is no evidence that the owner was aware of the dangerous conditions on the job site and “approved” them. Accordingly, the trial court was correct in directing a verdict in favor of the owner.
AFFIRMED.

. The exclusions related to demolition of existing structures, all work outside the owner’s property lines, landscaping, a sprinkler system, a swimming pool, a whirlpool, fireplaces, carpeting and cabinets.

. See Conklin v. Cohen, 287 So.2d 56 (Fla.1973); Cadillac Fairview of Florida, Inc. v. Cespedes, 468 So.2d 417 (Fla. 3d DCA), rev. denied, 479 So.2d 117 (Fla.1985); City of Mt. Dora v. Voorhees, 115 So.2d 586 (Fla. 2d DCA 1959), cert. denied, 119 So.2d 293 (Fla.1960).

. This case does not involve a summary judgment as was involved in Clerkin v. Kendall Town & Country Assocs., Ltd., 535 So.2d 288 (Fla. 3d DCA 1988).

.See generally Annot., "General contractor’s lia-' bility for injuries to employees of other contractors on the project,” 20 A.L.R.2d 868 (1951). Although not argued and relevant to this opinion, this argument of appellant raises an interesting theoretical question: If, under certain circumstances, the owner becomes a "general contractor” with attendant non-delegable duties to provide for the safety of all employees on the project, does he not also at the same time and for the same reasons become a "statutory employer” of subcontractor employees under § 440.10(1), Fla.Stat., with the attendant duty to provide workers’ compensation and with the attendant immunity from suit by such employees? See, e.g., Lingold v. Transamerica Ins. Co., 416 So.2d 1271 (Fla. 5th DCA 1982).

. See § 713.01(2), Fla.Stat.

. City of Miami v. Perez, 509 So.2d 343 (Fla. 3d DCA), rev. denied, 519 So.2d 987 (Fla.1987); Crawford v. Florida Steel Corp., 478 So.2d 855 (Fla. 1st DCA 1985); Coudry v. City of Titusville, 438 So.2d 197 (Fla. 5th DCA 1983); Van Ness v. Independent Constr. Co., 392 So.2d 1017 (Fla. 5th DCA), rev. denied, 402 So.2d 614 (Fla.1981).