WALLACE, Judge.
 

 An injured construction worker and his wife filed an action against the owners of the project under construction, a company that the owners had engaged to act as a “consultant” on the project, and the company’s agent. The company and its agent moved for summary judgment, contending that they did not owe a duty of care to the injured worker. The circuit court declined to enter a summary judgment in favor of the company. But the circuit court granted summary judgment in favor of the company’s agent and dismissed him from the action. The injured worker and his wife appeal.
 
 [1]
 
 Because the record reflects genuine issues of material fact concerning the liability of the company’s agent, we reverse the circuit court’s order dismissing him from the action and remand for further proceedings.
 

 I. THE FACTS
 

 The claims at issue in this case arise from a construction site accident.
 
 [2]
 
 On
 
 *877
 
 May 17, 2006, Joseph Cannon was working as a framer for the construction of a new residence on a lot in San Antonio, Florida, owned by Andrew and Brenda Hoffman. When the accident occurred, Mr. Cannon was woi’king on the second floor of the unfinished residence. He was using a pry bar to remove sheets of plywood that were covering a beam. The beam had been improperly installed and needed to be removed and replaced. Mr. Cannon was performing this task next to an exposed edge above the first floor. It had rained the previous day. Although the flooring was wet and slippery, Mr. Cannon was not wearing a safety harness, and there was no barrier separating him from the exposed edge while he worked.
 

 While Mr. Cannon was manipulating his pry bar to remove the plywood sheeting, he slipped and fell over the exposed edge to the cement floor below. After his fall, Mr. Cannon was transported by helicopter to a hospital for treatment. He sustained serious, permanent injuries as a result of the fall.
 

 Joseph and Vivian Cannon subsequently filed an action for damages against Andrew and Brenda Hoffman. The Cannons also sued Fournier Construction, LLC (the LLC), and Robert Fournier. The LLC is a licensed general contractor, and Mr. Fournier is its qualifying agent. For reasons that will be explained below, the precise role of the LLC on the Hoffmans’ project has been the subject of considerable controversy in the circuit court and in this appeal. Finally, the Cannons sued Glenn Rose, a framing contractor hired by the Hoffmans.
 

 When the Hoffmans decided to begin the construction of their new residence on a lot they already owned, they spoke with Mr. Fournier. He was employed as a superintendent for a large homebuilder and had substantial experience in residential construction. Mr. Fournier had obtained his general contractor’s license in 2005. Afterward, he established the LLC and served as its qualifying agent. Mr. Fournier was also the sole member, agent, and employee of the LLC.
 

 After a round of preliminary discussions and negotiations, the Hoffmans decided to engage Mr. Fournier to build their new residence. However, the conditions of Mr. Fournier’s employment with • the large homebuilder prohibited him from acting as a general contractor for others. To avoid this troublesome restriction, Mr. Fournier and the Hoffmans conceived an approach whereby Mr. Fournier would act as a consultant — instead of as a general contractor — in connection with the construction of the Hoffmans’ new residence. As the owners of the property, the Hoffmans would obtain the necessary permits to build the residence and hire and pay the trade contractors and material suppliers directly.
 

 To this end, Mr. Fournier prepared a Consulting Proposal (the Proposal) for the Hoffmans’ consideration. The Proposal, which is between the LLC and Andrew Hoffman, is only one page long. Attached to it are two additional pages consisting of cost estimates for the labor and materials necessary to construct the planned residence.
 

 Under a heading for the description of the consulting services to be provided by the LLC, the Proposal says only this: “Fournier Construction LLC is solely acting as a Consultant to the Hoffman ‘Owner/Builder’ home build of the above-mentioned property.” With regard to the Hoffmans’ responsibilities and duties, the Proposal provided:
 

 Homeowner acknowledges that he will be responsible for obtaining and paying directly for all permits, builder’s risk policies, soil tests, etc. Homeowner acknowledges and understands that he will
 
 *878
 
 be responsible for paying for all associated subcontractor costs, etc., to the subcontractor directly.
 

 Homeowner acknowledges and agrees that all Warranties of work performed will be fulfilled directly by the Florida Licensed Subcontractor who performed the work, and hereby waives any right to hold Fournier Construction LLC liable for any services provided by that said Contractor/Proprietor.
 

 For the LLC’s consulting services — whatever they were — the Hoffmans agreed to pay the LLC a total of $22,100 in three separate installments. The first installment was due upon acceptance of the Proposal. The remaining two installments were to be paid upon the completion of designated stages of the construction. The LLC and Mr. Hoffman executed the proposal on September 14, 2005. The Hoffmans paid the initial installment to the LLC, and the project commenced.
 

 In view of the litigation that followed Mr. Cannon’s unfortunate fall and resulting injuries, the Proposal is disappointingly vague concerning the nature and extent of the services that the LLC was to perform for the Hoffmans. A review of the relationship between the parties and what Mr. Fournier actually did is far more informative on this question. With regard to the parties’ relative sophistication concerning construction, neither of the Hoff-mans had any experience in building a residence. On the other hand, Mr. Four-nier was a licensed general contractor. Moreover, he had been employed in the construction industry for many years and had substantial experience in residential construction. Thus the Hoffmans were necessarily dependent on Mr. Fournier for his assistance in all aspects of planning, organizing, and supervising the construction of their new residence. At his deposition, when asked to describe Mr. Fournier’s role on the project, Mr. Hoffman said: “Well, he’d be basically building [the residence] ‘cause I know nothing about it.” Notably, both Mr. and Mrs. Hoffman testified in their depositions that they relied on Mr. Fournier with regard to compliance with applicable building codes, state and local ordinances, and job site safety requirements imposed by the Occupational Safety and Health Administration and others.
 

 The evidence in the record also reflects that Mr. Fournier assumed or performed a number of responsibilities in connection with the project. First, he accompanied Mrs. Hoffman to the local building department and helped her obtain the necessary permit to build the residence. Second, Mr. Fournier recommended trade contractors to the Hoffmans and assisted them in securing the services of the contractors that they selected. Third, Mr. Fournier visited the job site at least once per week and more often if there was a problem that required his attention. Fourth, Mr. Four-nier called for the necessary inspections as the work progressed; on occasions when the work did not pass inspection, he spoke with the inspector and handled the matter. Finally, as we will see in more detail in the discussion below of the events that led to Mr. Cannon’s fall, Mr. Fournier consulted with the trade contractors on the solution to defects or problems encountered in the construction of the residence.
 

 Although the Proposal characterized the LLC’s role on the Hoffman project as a consultant and not as a general contractor, Mr. Fournier placed a sign on the construction site that read, “Fournier Construction, LLC, Owner Builder.” The uncertain nature of Mr. Fournier’s role on the project apparently caused a considerable amount of confusion on the part of the trade contractors and suppliers. Numerous trade contractors and suppliers sent
 
 *879
 
 their invoices directly to the LLC or to Mr. Fournier. In turn, Mr. Fournier gave the invoices to the Hoffmans for payment. In addition, at least one of the trade contractors named Mr. Fournier as the contractor for the job on the notice to owner
 
 [3]
 
 that it sent to the Hoffmans.
 

 Thus the course of dealings between the LLC and the Hoffmans demonstrates that the LLC performed many of the functions that a general contractor would normally perform on a comparable residential construction project — with one important exception. Neither the LLC nor Mr. Fournier directly hired and paid the trade contractors and suppliers. This function remained the responsibility of the Hoffmans.
 

 Although the Hoffmans generally hired trade contractors who were recommended to them by Mr. Fournier, this was not the case with Glenn Rose, the framing subcontractor. Instead, Mr. Hoffman obtained a referral to Mr. Rose through a friend, and Mr. Hoffman hired Mr. Rose to perform the framing work on the project. In turn, Mr. Rose recruited Mr. Cannon to assist him with the framing. Mr. Cannon began work at the job site on Wednesday, May 10, 2006, one week before his fall.
 

 Before the day of the accident, Mr. Rose and Mr. Cannon identified a problem with the installation of a beam that was designed to support the second floor of the residence. Mr. Rose notified both Mr. Fournier and Mr. Hoffman about this problem. On the morning of May 17, Mr. Fournier and Mr. Hoffman met with Mr. Cannon at the job site to discuss the problem and to review the plan that Mr. Rose and Mr. Cannon had devised to correct it. Mr. Rose was not present for the meeting because he was running an errand. Thus Mr. Cannon described the problem and the proposed corrective measures to the other two men. According to Mr. Cannon, Mr. Fournier responded: “[Tjhat sounds good, that sounds like the only way .you can do it, go for it.” Mr. Hoffman, who was also present at the meeting, testified in his deposition that he believed that “Mr. Four-nier had a comfort level with the proposal as to how to fix the problem.” It is undisputed .that there was no discussion about the implementation of any safety measures before undertaking the corrective work.
 

 After the meeting, Mr. Cannon went to the second floor and began using his pry bar to remove the plywood sheeting that was covering the beam. It was during this operation that he slipped and fell over the exposed edge. After the accident, the parties learned that Mr. Rose did not have any workers’ compensation insurance in effect. Mr. Rose left the job site the day after Mr. Cannon fell, leaving the framing job unfinished.
 

 As alleged in the complaint, the theory of the Cannons’ action against the LLC and Mr. Fournier was that the LLC and Mr. Fournier
 

 had a duty to perform all work necessary for constructing the Home in a competent, safe and workmanlike manner consistent with general construction practices, and in accordance with the terms, conditions, plans and specifications of the construction plans, and in compliance with all applicable Federal, State’and local building codes, statutes, rules, and ordinances, for the protection of others, including Joseph Cannon.
 

 The Cannons alleged further that the LLC and Mr. Fournier had breached their duty of care in a variety of ways, causing the fall which resulted in Mr. Cannon’s serious injuries. The LLC and Mr. Fournier an
 
 *880
 
 swered the complaint and raised numerous affirmative defenses.
 
 [4]
 

 Both the LLC and Mr. Fournier moved for summary judgment. Relying on the language of the Proposal, the LLC and Mr. Fournier argued that the LLC was nothing more than a consultant on the project and that it did not act as a general contractor. The LLC and Mr. Fournier contended that because the LLC had undertaken only to act as a consultant, neither of them had any duty to construction workers — such as Mr. Cannon — to maintain the job site in a reasonably safe condition. The LLC and Mr. Fournier concluded that the absence of such a duty required the entry of a summary judgment in their favor.
 

 At the hearing on the motion for summary judgment, the circuit court had before it the depositions of Mr. Cannon, Mr. Fournier, Mr. Hoffman, and Mrs. Hoffman. The exhibits attached to the depositions include copies of the Proposal, the application for the building permit, an Owner/Builder Affidavit signed by Mrs. Hoffman when she obtained the building permit, the building permit itself, some invoices that were sent to the LLC and to Mr. Fournier, a notice to owner referring to Mr. Fournier as the contractor, and a photograph of the location where Mr. Cannon fell. In addition, the LLC and Mr. Fournier filed an affidavit from a construction safety expert in support of their position; the Cannons filed an opposing affidavit from another construction safety expert.
 

 The trial court heard extensive arguments from the parties on the motion for summary judgment. Before ruling, the conscientious trial judge appears to have familiarized herself with the pertinent portions of .the depositions and other materials in the record. In announcing her ruling on the potential liability of the LLC, the trial judge said, in pertinent part:
 

 The thing that I do look at a little more strongly is that there was a written agreement at all, and there was, and it is titled a consultant agreement.
 

 However, Mr. Fournier’s normal business and job title is as a general contractor; and at first blush when you look at the — you see the consulting contract, initially I was leaning towards the fact that that would not create a duty on Mr.— Mr; Fournieris part by being simply a consultant, but there are some indicators ... that perhaps it was more — a more hands-on type of involvement by Mr. Fournier than simply a stand-in-back-in-the-office consultant- type like a — you know, even an engineer or an architect can be held liable for obviously many, many aspects of their involvement.
 

 With Mr. Fournier-I came to the conclusion that the primary reason why he did a consulting agreement as opposed to a general contractor-type position was almost, if not exclusively, primarily because of his’ contractual obligations to [the large homebuilder].
 

 [[Image here]]
 

 And with the testimony of Ms. Hoffman, I — I myself begin to have a question as to his involvement and whether or not this was truly a hands-off, consultation-type situation or if, in fact, he was more of a general contractor and more in control of the site.
 

 That I believe rose to the level — and I did not find that that issue was crystallized beyond — with complete clarity to where I could grant [the] motion for
 
 *881
 
 summary judgment as to Fournier Construction, LLC.
 

 Thus the trial court focused on the evidence in the record reflecting the extent of the LLC’s control of the job site in declining to grant a summary judgment in its favor.
 

 On the other hand, with regard to the potential liability of Mr. Fournier, the trial judge explained her ruling as follows:
 

 However, I have heard absolutely no — no grounds, no — I have not seen a shred of anything anywhere where Mr. Fournier is alleged to be individually liable.
 

 The consulting contract is clearly in the name of Bob — Mr. Fournier, LLC, and everything appears to reference towards that, so I will grant [the] Motion for Summary Judgment as to Robert Fournier, individually, but I will deny as to Fournier Construction, LLC.
 

 Thus the trial court granted the summary judgment in favor of Mr. Fournier individually. The Cannons appeal the order dismissing Mr. Fournier as a defendant in the action.
 

 II. THE STANDARD OF REVIEW
 

 The standard of review for an order granting a motion for summary judgment is de novo and requires a two-pronged analysis.
 
 Volusia County v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126, 130 (Fla.2000). Summary judgment is proper only if (1) no genuine issue of material fact exists, viewing every possible inference in favor of the party against whom summary judgment has been entered,
 
 Huntington Nat’l Bank v. Merrill Lynch Credit Corp.,
 
 779 So.2d 396, 398 (Fla. 2d DCA 2000), and (2) the moving party is entitled to a judgment as a matter of law,
 
 Aberdeen at Ormond Beach,
 
 760 So.2d at 130. “If the record reflects the existence of any genuine issue of material fact or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist, summary judgment is improper.”
 
 Holland v. Verheul,
 
 583 So.2d 788, 789 (Fla. 2d DCA 1991).
 

 III. DISCUSSION
 

 The circuit court’s ruling denying summary judgment for the LLC but dismissing Mr. Fournier from the action is inconsistent. During the events in question, Mr. Fournier was the only member of the LLC and he was its sole agent and employee. Thus, anything that the LLC did in connection with the construction of the Hoffmans’ residence, it did by and through Mr. Fournier. “[Ojffieers or agents of corporations may be individually liable in tort if they commit or participate in a tort, even if their acts are within the course and scope of their employment.”
 
 White v. Wal-Mart Stores, Inc.,
 
 918 So.2d 357, 358 (Fla. 1st DCA 2005) (citing
 
 McElveen v. Peeler,
 
 544 So.2d 270, 271-72 (Fla. 1st DCA 1989));
 
 see also Moore v. PRC Eng’g, Inc.,
 
 565 So.2d 817, 820 (Fla. 4th DCA 1990) (holding that both an engineering company hired as a general consultant on a highway project and the company’s supervising engineer could be held liable to an injured employee of the general contractor for alleged negligence in supervision and in performing its function as the engineer on the project). The same rule applies to limited liability companies.
 
 See Young v. Hamilton,
 
 92 Fed.Appx. 389, 392 (9th Cir.2003);
 
 Vertrue Inc. v. Meshkin,
 
 429 F.Supp.2d 479, 503 (D.Conn.2006);
 
 Hoang v. Arbess,
 
 80 P.3d 863, 867-68 (Colo.App.2003). Thus, to the extent that the LLC could be held liable for its acts or omissions in connection with the construction of the Hoffmans’ residence, Mr. Fournier may be held liable as well. The circuit court was mistaken in reaching a contrary conclusion.
 

 
 *882
 
 The circuit court’s ruling that there was no genuine issue of material fact concerning Mr. Fournier’s liability for any negligent acts or omissions of the LLC was in error. But under the “tipsy coachman doctrine,” we are bound to affirm the circuit court’s order if it reached the correct result, even if it reached that result for the wrong reason.
 
 See Dade Cnty. Sch. Bd. v. Radio Station WQBA,
 
 731 So.2d 638, 644-45 (Fla.1999);
 
 Johnson v. Allstate Ins. Co.,
 
 961 So.2d 1113, 1115 (Fla. 2d DCA 2007). Thus we must determine whether the circuit court reached the -correct result in granting the summary judgment in favor of Mr. Fournier and in dismissing him from the action. To ascertain whether the trial court committed reversible error in granting the summary judgment in favor of Mr. Fournier, we must determine whether there are facts in the record that would support a determination that the LLC owed a duty of care to construction workers such as Mr. Cannon. If so, then the jury could find Mr. Fournier liable with the LLC for a breach of that duty.
 

 On' this appeal, the parties have addressed their arguments mainly to the question of whether the LLC was acting as a general contractor in connection with the construction of the Hoffmans’ residence. The Cannons contend that the consulting arrangement should be disregarded as a sham and that the LLC was actually acting as a general contractor. The Cannons conclude that as a general contractor, the LLC had “the duty to provide a safe construction work site” and could be held “liable for a dangerous condition [it] negligently created or approved.”
 
 See generally
 
 J.E. Macy, Annotation,
 
 General Contractor’s Liability for Injuries to Employees of Other Contractors on the Project,
 
 20 A.L.R.2d 868 (1952). Mr. Fournier responds that the LLC contracted only to provide consulting services and never assumed the duties of a general contractor on the Hoffman project. Mr. Fournier concludes that because the LLC was acting only as a consultant, neither he nor the LLC owed a duty of care to workers on the job site such as Mr. Cannon.
 
 [5]
 

 In short, the parties disagree about whether the LLC should be labeled as a “general contractor” or something else. Their legal conclusions about the extent of the LLC’s duty to provide a safe place to work stem from the label to be applied to it. We think a narrow focus on determining how the LLC can best be labeled is not the correct approach to-resolving the issue before us. The circuit court went to the heart of the issue about the extent of the LLC’s duty by looking at the facts in the record concerning the functions that the LLC assumed in connection with the project.
 

 As the circuit court properly noted in its ruling, there is evidence in the record that would support a finding that Mr. Fournier’s involvement in the project was “hands-on.” Comparing Mr. Fournier to professionals who are frequently involved in construction projects, the circuit court observed that “even an engineer or an architect can be held liable for ... many, many aspects of their involvement.” The circuit court continued by correctly identifying the critical point as the extent of the LLC’s control over and supervision of the job site. A person, or entity that controls
 
 *883
 
 and supervises the job site has a duty to provide workers on the job with a safe place to work.
 
 See Worthington Cmtys., Inc. v. Mejia,
 
 28 So.3d 79, 83-85 (Fla. 2d DCA 2009);
 
 Garcia v. Biltmore Court Villas, Inc.,
 
 534 So.2d 1173, 1175 (Fla. 3d DCA 1988). If the LLC assumed such a duty voluntarily or by contract, it may be held liable to workers who sustain injuries on the job caused by a breach of that duty without regard to whether the LLC was acting as a general contractor.
 
 See, e.g., Conklin v. Cohen,
 
 287 So.2d 56, 60-61 (Fla.1973) (architect);
 
 Juno Indus., Inc. v. Heery Int'l,
 
 646 So.2d 818, 824-26 (Fla. 5th DCA 1994) (engineer);
 
 Moore,
 
 565 So.2d at 820 (engineer);
 
 Geer v. Bennett,
 
 237 So.2d 311, 315-16 (Fla. 4th DCA 1970) (architect);
 
 Hammond v. Bechtel Inc.,
 
 606 P.2d 1269, 1276 (Alaska 1980) (construction manager);
 
 Riggins v. Bechtel Power Corp.,
 
 44 Wash.App. 244, 722 P.2d 819, 823-24 (1986) (construction engineer).
 
 See generally
 
 Philip H. Partridge & Vincent A. No-letto, Jr.,
 
 Construction Management: Evolving Roles and Exposure of Construction Managers and Architects/Engineers,
 
 12 Am. J. Trial Advoc. 55, 69-76 (Summer, 1988); John I. Spangler, III & William M. Hill,
 
 The Evolving Liabilities of Construction Managers,
 
 19 Construction Law. 30, 31-33 (Jan. 1999); Christi L. Underwood,
 
 Rights and Liabilities of Construction Managers, in Florida Construction Law and Practice
 
 §§ 4.27-.29 (Fla. Bar CLE 5th ed. 2006).
 

 In this case, the Proposal was essentially silent concerning the nature and extent of the duties assumed by the LLC on the Hoffman project. But there was evidence in the record before the circuit court that the LLC had undertaken most of the functions that one would expect a general contractor to perform on a residential construction project. These functions included regular visits to the job site and addressing problems encountered on the job with inspectors and trade contractors. And the functions that the LLC declined to assume — the direct hiring and payment of trade contractors and material suppliers — had little or no relation to control and supervision of the job site. Furthermore, the Hoffmans had no experience in residential construction. They necessarily relied exclusively on Mr. Fournier for compliance with applicable laws, ordinances, and safety requirements.
 

 Perhaps the most telling indicator in the record of the LLC’s assumption of responsibility for control of the job site arises from the framing contractor’s request for Mr. Fournier’s approval of a plan for the correction of the problem with the beam that had been improperly installed. Both Mr. Rose and Mr. Hoffman spoke with Mr. Fournier by telephone about the problem and about the manner in which it could be corrected. In addition, Mr. Fournier met with Mr. Cannon and Mr. Hoffman at the job site before the repair began in order to review the problem and to evaluate the plan for its correction. Although Mr. Rose was absent on an errand, Mr. Cannon reviewed the problem with Mr. Fournier and obtained his approval of the corrective plan before proceeding further. This evidence would support an inference that Mr. Fournier was in control of the job site to the extent that he had the ability to require the initiation of a fall protection plan before Mr. Cannon began using his pry bar on a wet, slippery floor next to an exposed edge on the second floor of the project.
 

 IV. CONCLUSION
 

 There was evidence in the record before the circuit court sufficient to create issues of material fact concerning the LLC’s responsibility — and thus Mr. Fournier’s as well — for control of the job site and supervision of matters relating to safety on the
 
 *884
 
 job. These issues of material fact precluded the entry of summary judgment for both the LLC and its agent, Mr. Fournier. For these reasons, we reverse the circuit court’s order to the extent that it dismissed the Cannons’ action against Mr. Fournier. We remand this case to the circuit court for further proceedings.
 

 Reversed in part and remanded.
 

 WHATLEY and MORRIS, JJ., Concur.
 

 [1]
 

 . Because the circuit court's order completely disposed of the case against the company’s agent, this court has jurisdiction under Florida Rule of Appellate Procedure 9.110(k).
 
 See Kidweli v. Gen. Motors Corp.,
 
 975 So.2d 503, 504 (Fla. 2d DCA 2007).
 

 [2]
 

 . The facts — which are drawn from the pleadings, the depositions of the parties, and the affidavits in the record. — are reviewed in the light most favorable to the injured conslruction worker and his wife as the nonmoving parties against whom the summary judgment was entered.
 
 See Markowitz v. Helen Homes of Kendall Corp.,
 
 826 So.2d 256, 258-59 (Fla.2002). The accounts of the pertinent events offered by the parties in their depositions are not entirely consistent. In particular, the deposition testimony of Robert Fournier, the company’s agent, differs from the statement of the facts presented here concerning a number of significant details.
 

 [3]
 

 .
 
 See
 
 § 713.06, Fla. Stat. (2005).
 

 [4]
 

 . We note that
 
 workers' compensation
 
 immunity was not asserted as a defense in the circuit court.
 

 [5]
 

 . Alternatively, Mr. Fournier argues that even if the LLC had agreed to act as a general contractor on the Hoffman job, it "would not have had the legal obligation to supervise [Mr. Cannon] in the performance of his work and has no liability to an independent contractor injured while engaged in his own work.” Thus Mr. Fournier would not have had any liability either.