# Third District Court of Appeal
## State of Florida

Opinion filed April 3, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0175
Lower Tribunal No. 18-40312
_____

**Claudio Navarro, et al.,**
Appellants,

vs.

**Alfredo L. Borges, et al.,**
Appellees.

An appeal from the Circuit Court for Miami-Dade County, Carlos Guzman, Judge.

South Florida Appeals, PA, Wm. Allen Bonner, The Williams Law Group, and Stewart D. Williams, for appellants.

Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Donna M. Krusbe (West Palm Beach), and Sergio R. Casiano, Jr., for appellee, Alfredo L. Borges.

Before SCALES, MILLER, and GORDO, JJ.

MILLER, J.

This dispute traces its origins to a construction accident. Appellant, Claudio Navarro, fell while securing a tarp on the roof of a two-story residence in preparation for an insurance inspection.[1] He subsequently filed suit against appellee, Alfredo L. Borges, the president of his corporate employer, contending Borges breached a duty to furnish adequate safety equipment. Finding there was no evidence to establish that Navarro acted under the direction of Borges on the day of the accident, the trial court rendered a final summary judgment. It is from that decision that Navarro appeals. Because material factual issues precluded the finding below, we reverse.

## BACKGROUND

Navarro performed labor for Star Brite Group, Inc., a general contractor. For more than two years, he worked exclusively for Star Brite and was compensated on a bi-weekly basis. Borges was the president of Star Brite. In that capacity, he allegedly "control[led]" and "overs[aw] all aspects" of Star Brite's construction projects.

In early October 2017, Borges dispatched Navarro to Palmetto Bay to place a tarp on the roof of a residence damaged during Hurricane Irma.

---

[1] Navarro's wife is a plaintiff in the lower tribunal, and she, too, is an appellant.

Although Navarro was not provided with any safety equipment, the tarp was installed without incident.

On October 17, 2017, Navarro was installing tiles at another construction site when he purportedly overheard two of his co-workers, Roger Perez and Carlos Cabrera, discussing a problem that had arisen with the tarp. According to Perez and Cabrera, the tarp had shifted, causing the roof to leak, and Borges "had given the order" to take corrective action. "[N]obody [had] organized to go," however, and an insurance inspection was scheduled for the following day. Ostensibly sensing some urgency, Navarro "organized to go early" with the other men the following morning.

Later that afternoon, Borges arrived at the jobsite. He appeared agitated and inquired as to why the roof had yet to be covered. Navarro and Cabrera assured him they intended to go the following morning.

An excerpt from Navarro's deposition, which was offered in opposition to summary judgment, reflects further details relating to that conversation:

> Q.  Now, who first contacted you with respect to going to the [Palmetto Bay] house . . . for purposes of covering the roof?
>
> A.  Mr. Alfredo [Borges] wanted the — the cover — the roof to be covered.
>
> Q.  How do you know that?
>
> A.  I was there when it was informed to Carlos [Cabrera].

3

Q. Are you saying that Mr. Alfred Borges the day before October 18, 2017 —.

A. Yes.

Q. — that you were present when Mr. Borges went to Carlos Cabrera and told him that this roof needed to be covered?

A. Yes. Because it was late and had been asked why we had not gone. So we programmed — they programmed that we go next day early. Yes.

Q. Who programmed?

A. Mr. Alfredo [Borges] and Carlos [Cabrera].

Q. And you heard that entire conversation?

A. I was working next to them.

Navarro and Cabrera proceeded to the Palmetto Bay residence the following day, as arranged, while Perez retrieved supplies from Home Depot. Navarro mounted the roof without any safety equipment and fell and sustained significant bodily injuries.

Navarro then filed suit against Borges and Star Brite. After conducting discovery, Borges moved for summary judgment. In his motion, he contended the record was devoid of any evidence he instructed Navarro to secure the tarp on the day of the incident. He argued that it logically flowed he had no duty to provide safety equipment. Navarro opposed the motion, asserting that the conversations reported by Borges, at a minimum,

4

precluded summary judgment.  The trial court granted the motion, and the instant appeal ensued.

## STANDARD OF REVIEW

We review an order granting summary judgment de novo.  See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). In performing this task, we must view the record and reasonable inferences in the light most favorable to Navarro, the nonmovant.  See VME Grp. Int'l, LLC v. Grand Condo. Ass'n, Inc., 347 So. 3d 461, 466 (Fla. 3d DCA 2022).

## ANALYSIS

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fla. R. Civ. P. 1.510(a).  In Romero v. Midland Funding, LLC, 358 So. 3d 806 (Fla. 3d DCA 2023), this court further explained:

> When seeking summary judgment, the moving party must identify "each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fla. R. Civ. P. 1.510(a).  Once the party moving for summary judgment satisfies this initial burden, the burden then shifts to the nonmoving party to come forward with evidence demonstrating that a genuine dispute of material fact exists.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 . . . (1986) (noting that the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'" (quoting Fed. R. Civ. P. 56)).

5

Id. at 808.

A dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In this vein, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249–50 (internal citations omitted).

The new Florida Rule of Civil Procedure 1.510 indubitably endows the trial court with considerably broader authority to resolve a case on summary judgment. However, "the general rule remains intact: credibility determinations and weighing the evidence 'are jury functions, not those of a judge.'" Gracia v. Sec. First Ins. Co., 347 So. 3d 479, 482 (Fla. 5th DCA 2022) (quoting Anderson, 477 U.S. at 255)). Thus, competing material evidentiary showings are incapable of resolution on summary judgment.

It is axiomatic that a contractor has the duty to provide a safe work site. See Cannon v. Fournier, 57 So. 3d 875, 882–83 (Fla. 2d DCA 2011) ("A person or entity that controls and supervises the job site has a duty to provide workers on the job with a safe place to work."). Consequently, the contractor can be held liable for a dangerous condition it "negligently created or approved." Id. at 882.

6

"Individual officers and agents of a corporation are personally liable where they have committed a tort even if such acts are performed within the scope of their employment or as corporate officers or agents." White-Wilson Med. Ctr. v. Dayta Consultants, Inc., 486 So. 2d 659, 661 (Fla. 1st DCA 1986); see also Moore v. PRC Eng'g, Inc., 565 So. 2d 817, 820 (Fla. 4th DCA 1990) (holding that both engineering company hired as general consultant on highway project and company's supervising consultant could be held liable to injured employee of general contractor for alleged negligence in supervision and in performing its function as engineer on project). For individual liability to attach, however, the plaintiff must establish the corporate officer or agent was "actively negligent." White v. Wal-Mart Stores, Inc., 918 So. 2d 357, 358 (Fla. 1st DCA 2005). Hence, allegations of mere passive negligence in this context are insufficient to support a cause of action. See id.

Against these principles, we examine the instant case. Viewing the facts in the light most favorable to Navarro, as we must, the record establishes that Borges gave the initial order to place the tarp on the roof of the residence. No safety equipment was provided at that time.

Further, the conversations Navarro relayed occurred the day before the incident similarly demonstrated that Borges issued the secondary order

7

to secure the tarp.  Indeed, Navarro attested that he was "programmed" by Borges to secure the tarp the following day, and, once again, no safety equipment was provided.

We are cognizant that the word "programmed" is arguably nebulous if considered in isolation.  When viewed in conjunction with the holistic record, however, the term, at a minimum, connotes an affirmative act.  Accordingly, we conclude Navarro presented probative evidence that Borges engaged in misfeasance, rather than mere nonfeasance, and we reverse the order under review and remand for further proceedings.[2]

Reversed and remanded.

---

[2] As this issue is dispositive, we decline to consider the further assertion of error.