857 So.2d 199 (2003)
Boris RODRIGUEZ, Appellant,
v.
NATIONAL DETROIT, INC., Appellee.
No. 3D02-1674.
District Court of Appeal of Florida, Third District.
July 16, 2003.
Rehearing and Rehearing Denied October 17, 2003.
Bambi G. Blum, Miami; and Stabinsky & Funt, for appellant.
Ralph O. Patino; and Ralph O. Anderson, Miami, and Dominic Tamarazzo, for appellee.
Before LEVY, RAMIREZ, and WELLS, JJ.
Rehearing and Rehearing En Banc Denied October 17, 2003.
PER CURIAM.
Boris Rodriguez appeals from an adverse final summary judgment entered in appellee National Detroit, Inc.'s favor on claims for strict products liability and negligence. We affirm.
National Detroit is a manufacturer of a power tool used to sand and polish acrylic surfaces.[1] National Detroit sold one of these sanders to Van Teale, Inc. in 1988. Van Teale is a manufacturer of acrylic lighting fixtures that employed Boris Rodriguez. While operating the sander at Van Teale in 1997, Rodriguez injured himself in the eye. He filed suit against National *200 Detroit for strict products liability and negligence alleging that the one-inch screw used in the sander, as well as the protective rubber boot, was defective.
Rodriguez's expert, Frank Grate, testified that he took measurements and conducted forensic analysis, as well as a microscopy test of the screw found in the sander and the rubber boot. He testified that the screw found in the sander was not a one-inch screw. The inside diameter of the counterweight had sustained a certain amount of disturbance marks and the counterbore had been drilled fairly deeply. This prevented the intended tight fit between the counterweight screw and the counterweight. The test of the rubber boot also revealed some disturbance marks and the interior of the boot showed signs of wear. Grate also noted that a ring which should have been fastened to the top of the boot had been displaced.
Grate determined that the sander was defective and unreasonably dangerous at the time in which the sander left National Detroit. He found that the screw used to hold the lower counterweight was not strong enough. This caused the screws to vibrate loose and break. He also found that the rubber boot was not strong enough to contain the counterweight. This caused the sander to release parts that would have otherwise been retained inside the rubber boot in the event the screw failed.
Grate also determined that the defects in the screw and rubber boot existed before and after any repair performed on the sander, and apart from any repair. Any repair performed on the sander did not materially alter or modify the nature or function of the sander. He found that the rubber boot had not been modified, altered, or repaired. The rip in the rubber boot occurred from the inside. A part from inside the sander thus must have caused the rip in the rubber boot. He concluded that a stronger screw and rubber boot would have prevented Rodriguez's injury.
National Detroit's expert, Vincent D. Morabit, testified that National Detroit used a one-inch screw to secure the lower counterweight to the shaft. He found that the sander had been repaired and had been pulled apart: the welch plug was gone; there was scribing on the underside of the aluminum plate on the underside of the pad; there were incredible striation marks along the internal side of the rubber boot; there was hammering; and there was pounding along the counterweight. The screw had been changed and altered from National Detroit's original production and differed from the one manufactured by the die casting process. The depth of the hole in the counterweight was obviously and substantially deeper than the original cast bore and into which a one-inch screw could not possibly fit correctly. The screw broke twice and dislodged the counterweight. The sander was also repaired using a broken screw and possibly, the unit was assembled with an impacted counterweight. He also testified that he did not know with certainty whether the sander screw was the original screw.
Morabit also found that the rubber boot, in addition to the screw and other components of the sander, was modified and changed after the sander left National Detroit based upon National Detroit's design and manufacturing specifications.
All Power Tools, Inc. serviced National Detroit sanders. Angel Benitez and Andy Negron are All Power Tools' owner and repairer, respectively. Negron testified that All Power Tools performed an overhaul of the sander on February 13, 1997, six days prior to Rodriguez's injury, which included a disassembly of the sander. All Power Tools checked the sander's screw *201 and counterweight, as well as other components. Negron testified, as did Benitez, that they would not have returned a sander with a rubber boot in its present condition to any customer because the rubber boot was unsafe to use.
Roger Hoffman, National Detroit's production manager and co-owner, testified that screws break and that National Detroit had received complaints of broken counterweight screws. In 1996, National Detroit made design changes to the sander. National Detroit changed the hole size, the counterbore size, and the depth of the counterbore so that they could use a larger screw in the counterweight and thereby strengthen the sander. After 1996, Hoffman had not seen any of the screws break. The sander warranty card did not show a record of replacement parts.
In order to prevail in a products liability action brought under a theory of either strict liability or negligence, a plaintiff must demonstrate that the injuries complained of were caused by a defective product whose defect existed at the time of injury and at the time in which the product left the manufacturer's control. See Cassisi v. Maytag Co., 396 So.2d 1140, 1143 (Fla. 1st DCA 1981). We cannot say in this case that the sander which caused Rodriguez's injuries reached him without a substantial and material alteration subsequent to the sander's manufacture.
There is undisputed record evidence which establishes that the sander was materially and substantially altered and/or changed from the condition in which National Detroit had originally manufactured and sold the sander, and that the alterations and changes caused the sander to fail on the day of the accident. The testimony of Grate and Morabit demonstrate that the counterweight screw found in the sander did not meet National Detroit's design specifications. It is undisputed that the counterweight screw had been broken at least once before the accident. There is undisputed evidence that the counterweight, as well as the rubber boot, was also materially altered. The counterbore had been drilled and its surface was tapered. The rubber boot's interior was worn and the ring which should have been fastened to the boot's top was absent.
There is also insufficient evidence in this record from which to determine that the sander was unreasonably dangerous at the time in which the sander left National Detroit. Grate's affidavit merely states a number of conclusions and opinions about the sander's ability to perform with the sander's original screw without any basis in fact. He further testified that his opinion as to the sander's design was based upon a dimensional analysis he performed and that he had no comments or criticisms about National Detroit's selection of the rubber boot. Morabit was also uncertain whether the sander's screw was the original screw that National Detroit placed in the sander eight years prior to Rodriguez's injury. It is further undisputed that All Power Tools performed an overhaul of the sander a few days prior to the accident.
The trial court therefore properly granted summary judgment in National Detroit's favor.
Affirmed.
NOTES
[1] This hand held power tool is also known as a sander. The sander has various components, including a crankshaft, counterweight, counterweight screw, and rubber boot. The crankshaft connects the sander's motor to the polishing surface of the sander. It turns and thereby creates the motion necessary to sand. The counterweight, secured to the crankshaft by a screw, likewise moves to keep the sander well balanced. The rubber boot encases all of these components to protect users from any moving parts.